STATE v. THE GOPHER TIRE & RUBBER COMPANY.[1]

May 28, 1920.

No. 21,772.

**Blue Sky Law — corporation within purview of the statute.**
    1. A corporation issuing and selling certificates which provide that, in consideration of a sum paid by the purchaser and his assistance in promoting the sale of goods manufactured by the corporation, he shall share in the profits of the business, is engaged in the business of selling securities within the meaning of chapter 429, Laws 1917, as amended, commonly known as the "Blue Sky Law."

**Statute a proper exercise of police power.**
    2. The law is intended to put a stop to the sale of securities that will not pass inspection by the State Securities Commission, and is a proper exercise of the police power to protect the public against imposition. There is no hard and fast rule for determining whether a security is or is not within the purview of the statute.

[1]Reported in 177 N. W. 937.

**Definition of investment.**

3. The placing of capital or laying out of money in a way intended to secure income or profit from its employment is an investment, and the certificates issued by defendant were investment contracts.

**Indictment not bad for duplicity.**

4. An indictment charging defendant with having sold its certificates to six persons who are named and to others not named, without having a license to do so, is not bad for duplicity.

**Selling securities without a license necessitates the making of several sales.**

5. The rule against duplicity does not apply where the indictment charges an offense consisting of several distinct acts which are in fact to be construed as one continuous act or transaction. The offense of selling securities without a license is not committed where there is only a single or isolated sale, hence the indictment must set forth the making of several sales in the nature of continuous acts or transactions.

Defendant was indicted by the grand jury of Washington county charged with the crime of selling securities without a license. Defendant interposed a demurrer to the indictment upon the grounds that it charged defendant with more than one offense and that the facts alleged did not constitute a public offense. The court, Johnson, J., overruled the demurrer and certified that the questions of law arising upon the indictment and demurrer were in the opinion of the judge so important and doubtful as to require the decision of the supreme court. Affirmed.

*Chester W. Johnson* and *Thompson, Hessian & Fletcher,* for appellant.

*Clifford L. Hilton,* Attorney General, *Montreville J. Brown,* Assistant Attorney General, and *Reuben G. Thoreen,* County Attorney, for respondent.

LEES, C.

An indictment was returned against the defendant, charging it with the violation of the so-called "Blue Sky Law" of this state. It demurred, the demurrer was overruled, and, at defendant's request, the court certified the following questions for determination by this court:

(1) Is the indictment in this case bad for duplicity?

(2) Does the indictment in this case state facts sufficient to constitute a public offense?

(3) Is the written instrument set out in the indictment to be construed as a stock, bond, investment contract, or other security of the defendant company, within the meaning of chapter 429 of the General Laws of 1917, as amended?

The indictment charged defendant with the crime of "selling securities without a license, committed as follows: That * * * at the city of Stillwater * * * between the 21st day of July, 1919, and the 7th day of August, A. D. 1919, both dates inclusive * * * (defendant) did wilfully, unlawfully and wrongfully sell to E. H. Huhner, J. H. Haines, Julius F. Loeber, O. L. Anderson, John Lustig, Otis T. Johnson and others certain securities issued by it, without first having obtained a license to sell such securities from the State Securities Commission, * * * (defendant) being then and there a Minnesota corporation, engaged in the business, within the state of Minnesota, of selling securities issued by it." It set out a copy of a certificate alleged to be in form the security so issued and sold. The certificate recites that defendant has appointed the holder as one of its agents to assist by word of mouth and in other ways in the sale of tires and tubes which defendant will manufacture. It provides that, in consideration of the certificate holder's promise to render such assistance and in further consideration of $50 paid by him, defendant will divide pro rata among all the holders of like certificates, who reside at a specified place, ten per cent of the net price of such tires and tubes as may be sold by defendant's representative, at such place, such division to be made quarterly for the period of 20 years; that the holder is entitled to a discount of ten per cent on all its goods which he may purchase from defendant for his personal use, and that defendant will annually set aside as a bonus to certificate holders all of its excess earnings after paying operating expenses, fixed charges and dividends to stockholders, the same to be distributed at its option in the form of preferred stock. The certificates are transferrable upon notice to defendant, and contain a clause stating that they shall not be construed to be certificates of stock, or security or investment contracts.

The statute under which the indictment was returned is chapter 429, p. 635, Laws 1917, as amended by chapter 105, p. 99, Laws 1919. Summarized, it is as follows: All persons, firms and corporations are prohibited from engaging, within this state, in the business of selling or negotiating for the sale of any stocks, bonds, investment contracts, or other securities issued by him or it, except securities specifically enumerated in section 2 of the act. No investment company or dealer shall sell or offer for sale, or profess the business of selling or offering for sale, securities coming within the scope of the act, unless and until he or it shall have furnished to the State Securities Commission information touching the honesty, good faith and character of the business of the company or dealer, and shall have obtained from the commission a license to sell securities. Violation of any of the provisions of the act is made a gross misdemeanor.

1. The purpose of the statute is to protect the public against imposition. It is a new form of regulatory law which, in the course of a few years, has swept over 33 states. It has been said that its popular name indicates the evil at which it is aimed, that is, speculative schemes having no more basis than so many feet of blue sky, Hall v. Geiger-Jones Co. 242 U. S. 539, 37 Sup. Ct. 217, 61 L. ed. 480, L.R.A. 1917F, 514, Ann. Cas. 1917C, 643; State v. Agey, 171 N. C. 831, 88 S. E. 726, and that it is intended to put a stop to the sale of shares in visionary oil wells, nonexistent gold mines and other "get-rich-quick" schemes calculated to despoil credulous individuals of their savings. It is a proper and needful exercise of the police power of the state and should not be given a narrow construction, for it was the evident purpose of the legislature to bring within the statute the sale of all securities not specifically exempted. The commission is better qualified than the average investor to ascertain whether any real values lie behind mere paper evidences of value. It has power, in making its investigation, to compel a full disclosure of the facts upon which to base an intelligent judgment. Schemes devised to get the money of prospective investors are innumerable. Many of them, though not fraudulent, are unsound or visionary. It is a matter of common knowledge that, in issuing stocks and securities, the hope of future profits has been capitalized, and that property and

rights of uncertain worth have been treated as having proved values. To lay down a hard and fast rule by which to determine whether that which is offered to a prospective investor is such a security as may not be sold without a license would be to aid the unscrupulous in circumventing the law. It is better to determine in each instance whether a security is in fact of such a character as fairly to fall within the scope of the statute.

No case has been called to our attention defining the term "investment contract." The placing of capital or laying out of money in a way intended to secure income or profit from its employment is an investment as that word is commonly used and understood. If defendant issued and sold its certificates to purchasers who paid their money, justly expecting to receive an income or profit from the investment, it would seem that the statute should apply. The statute makes specific mention of stock which, properly speaking, is not a security, and follows the enumeration of investments which fall within its scope with the words, "herein called securities," indicating that the legislature has not used the term "securities" in a literal but in a broad sense. In that sense, these certificates may properly be regarded as investment contracts or securities. The mere fact that defendant has studiously declared that they are not, does not require a court to hold that they are something else.

We cannot sustain defendant's contention that the certificates are contracts for the performance of services by its agents. The purchaser pays $50 for a certificate in addition to agreeing to become a "booster agent" for the sale of defendant's goods. As an inducement to invest, he is promised a share in defendant's profits. This promise extends, first, to the profits realized on sales made by the local dealer, and, next, to defendant's total profits. It appears to have been the purpose of defendant to obtain capital by the sale of its certificates, without issuing stock, and, at the same time, to build up a market for its goods, without spending money in advertising. The certificates are like stock in that they give their holders the right to share in the profits of the corporation, but their value is purely speculative, for their holders get no interest in the tangible assets of the corporation.

We reach the conclusion that they fairly fall within the scope of the statute, and, therefore, the second and third questions certified are answered in the affirmative.

2. At common law a count in an indictment which charged two distinct offenses, each distinctively punishable, was bad and might either be quashed on the defendant's motion or demurred to on the ground of duplicity. Wharton, Crim. Pro. § 292. But this rule had no application where the offenses charged were not felonies but only misdemeanors. Wharton, Crim. Pro. § 335.

Section 9185, G. S. 1913, provides that a demurrer may be interposed to an indictment charging more than one offense, except in cases where it is allowed by statute.

The indictment now before us charges defendant with a gross misdemeanor—an offense not amounting to a felony. Sections 8466, 8483, G. S. 1913. Therefore, it would not have been demurrable under the practice at common law if it had charged defendant with making two or more distinct sales. Apparently the common law rule has been changed by our statute. In at least two early cases, it was assumed that the rule against duplicity extended to indictments charging the commission of offenses of the grade of misdemeanors. State v. Coon, 14 Minn. 340 (456); Chute v. State, 19 Minn. 230 (271). The reason for the rule against duplicity is that the defendant ought not to be embarrassed or confused in making his defense by the necessity of meeting several distinct accusations founded on disconnected acts and requiring the production of evidence of a different nature. It does not exist where the acts charged are part of the same transaction, as, for example, a libel of two persons in a single article published by a single act, State v. Hoskins, 60 Minn. 168, 62 N. W. 270, or uttering as true at one time and to the same person a forged note and a forged mortgage securing it, State v. Moore, 86 Minn. 422, 90 N. W. 787. In Pointer v. United States, 151 U. S. 396, 14 Sup. Ct. 410, 38 L. ed. 208, it was said that a court must not permit a defendant to be embarrassed in his defense by a multiplicity of charges in one indictment, but that a joinder in one indictment in separate counts of different felonies of the same class or grade and subject to the same punishment is not necessarily

fatal to the indictment upon demurrer, and that if the court, in the course of the trial, discovers that the substantial rights of the defendant may be prejudiced by a submission to the same jury of more than one distinct charge of felony among two or more of the same class, it may compel an election by the prosecution.

Generally speaking, where an offense consists of several distinct acts which are in fact to be construed, when taken together, as one continuous act, such acts may be charged in an indictment without making it subject to objection for duplicity. Joyce, Indict. § 417; Wharton, Crim. Pro. § 300.

The application of these principles to the present indictment is this: Each of the several sales alleged are connected with or incidents of one continuous transaction, that is, the selling of securities without a license. The sales, if each one amounted to a separate offense, were of the same grade or class and subject to the same punishment, and the trial court, if defendant is likely to be embarrassed in making its defense, has power to compel and should compel the state to elect upon which of the sales alleged it will rely for a conviction.

Except for the provision that a single or isolated transaction is not covered by the statute, subd. j, § 2, c. 429, p. 637, Laws 1917, the number of sales that must be shown to establish the offense charged is not specified. If the indictment had alleged that a sale was made to Huhner and another to Haines, it might have been good, but it certainly would not have been good if it had stopped after charging a sale to Huhner. If it was necessary, to allege that more than one sale was made, it cannot be said that the indictment is bad because it alleges that six or more sales were made.

Cases involving indictments for the sale of intoxicating liquors are analogous. In such cases, it has been held that an indictment is not bad for duplicity which charges defendant with the sale of 20 glasses of liquor to divers persons at divers times, the sale of liquor by the glass or dram being prohibited. Zumhoff v. State, 4 Greene (Iowa) 526; Commonwealth v. Broker, 151 Mass. 355, 23 N. E. 1137.

A criminal complaint charging defendant with selling, dealing in and giving away intoxicating liquor, was held not to be double, although

the statute made each of the acts charged a distinct offense. The court said that by charging the commission of the several acts conjunctively, and that defendant had no license, but one offense was charged, namely, trafficking in intoxicating liquors without a license, and that there could be but one conviction and one punishment for one offense. State v. Bielby, 21 Wis. 206. A similar ruling was made in State v. Gummer, 22 Wis. 422, where the complaint contained several counts, charging defendant with having sold intoxicating liquors without a license on different days to different persons named in the complaint and to others whose names were not known. See also State v. McGinnis, 30 Minn. 52, 14 N. W. 258; Wharton, Crim. Pro. § 303; Joyce, Indict. § 418.

We conclude that the indictment is not bad for duplicity and that the first question certified should be answered in the negative.

The order overruling the demurrer is affirmed.

DIBELL, J., (dissenting.)
BROWN, C. J., took no part.