BROWNIE OIL COMPANY OF WISCONSIN, Appellant, vs. RAILROAD COMMISSION OF WISCONSIN, Respondent.

*January 11—February 9, 1932.*

90

The cause was submitted for the appellant on the brief of *Hill, Beckwith & Harrington* of Madison, and for the respondent on that of the *Attorney General* and *Samuel Bryan,* assistant attorney general.

WICKHEM, J. The contentions of the plaintiff are that the coupon book is not a security because it does not fall within the definition of the term contained in sub. (7), sec. 189.02, Stats.; that the good-will contract is not a security, first, because it is a gratuity; second, because it is a contract for personal services; and third, because it gives the holder no share in the assets or profits of the company. It is further contended that the coupon book and the good-will contract cannot be treated as a single contract, since each is based upon a separate, and distinct consideration.

It will not be necessary to consider whether the coupon book, or the good-will contract, standing alone, is a security, because we are of the opinion that the two must be treated as a single contract. The only consideration for the good-will contract is that the customer, if convenient, will make his purchases from one of plaintiff's service stations, and that he will recommend plaintiff's products to his friends and neighbors. In our judgment this is entirely too shadowy and vague to have been the intended consideration for this good-will contract. It is to be noted that the good-will contract is only entered into with those who purchase coupon books and who pay the $35. The two contracts are inseparable in the view of the plaintiff, for the purposes of sale, and the conclusion seems to us inevitable that the good-will contract

is based upon the same consideration which supports the promise contained in the coupon book.

The question is therefore presented whether under sub. (7) of sec. 189.02, Stats., the contract constitutes a security. The statutory definition of a security in the above section is:

" 'Security' or 'securities' include all bonds, stocks, land trust certificates, collateral trust certificates, mortgage certificates, certificates of interest in a profit-sharing agreement, notes or other evidences of debt, or of interest in or lien upon any or all of the property or profits of a company; and all interest in the profits of a venture and the notes or other evidences of debts of an individual; and any other instrument commonly known as a security."

The type of the contract under examination here has given the courts and law writers a considerable amount of difficulty. It is stated in the case of *In re Hawkeye Oil Co.* 19 Fed. (2d) 151:

"Certificates of this precise character constitute, apparently, a relatively new phase of corporate financing. Yet the facts before me indicate that in recent years certificates of the same or similar character have been widely or extensively used by companies engaged in the sale of gasoline. The relation which the holder of such certificates bears to the corporation, its creditors and stockholders, and their respective rights growing out of such relationship, have, so far as I am advised, been considered by the courts in but three instances. . . .

"That the ascertainment of the relation of the certificate holders to the corporation, and the definition of that relationship in terms of well-established legal relations between individuals or individuals and corporations, is not free from difficulty, Judge SCHOONMAKER and the referee both concede. The difficulty exists because the contract seems to give rise to rights or incidents hitherto probably not brought into combination, and which, when severally considered, have been recognized as peculiar to different, even contrasting relationships." See, also, 28 Columbia Law Review, p. 65.

The difficulty so far experienced by the courts has been to determine whether this contract creates a debtor-creditor relationship between the issuing corporation and the holder, or whether it constitutes the holder an enterpriser of some sort with a status analogous to that of stockholder. No doubt exists as to the purposes of the certificates. The issuing corporation seeks first to have financed a particular service station by means of customer advances, and second, to secure the custom and recommendation of those who purchase certificates by offering certain returns based upon the volume of business done. It is probably not important in this action that the relations between the certificate holder and the corporation be definitely labeled. It is not at all clear that the stock of labels is sufficient accurately to describe the relationship. In several respects the person purchasing one of these books falls short of being a creditor; in several others he falls short of being a stockholder. The question therefore arises whether this failure definitely to bring the certificates within the category of stock, on the one hand, or bonds, on the other, prevents this from being a security. We think it does not. This is a device for financing a corporation. The inducement to secure this financing is the promised creation of a fund which will later be distributed to the person making the investment or furnishing the financing. This person waives his right to any interest or dividends as such, but he does invest with the hope or expectation that the money invested will be returned to him together with some payment for its use. He acquires the right to have the fund accumulated and to receive his distributive share when it is accumulated. He accepts the risk that the enterprise will be unable to get into operation and that the period of its operation will be neither sufficiently long nor successful to bring him the expected returns. In

*State v. Gopher Tire & Rubber Co.* 146 Minn. 52, 177 N. W. 937, the court said:

"The placing of capital or laying out of money in a way intended to secure income or profit from its employment is an 'investment' as that word is commonly used and understood."

We think the contract which evidences the investor's right to this return should be treated as a security unless it is without the definition of "security" contained in sub. (7), sec. 189.02. Since the contract under examination here evidences a right to have accumulated the fund heretofore referred to, it is "evidence of . . . interest in . . . property . . . of a company." It therefore seems to us to fall within the letter and spirit of the securities law.

In *Creasy Corp. v. Enz Bros. Co.* 177 Wis. 49, 187 N. W. 666, it was said, referring to the act:

"Its purpose was to protect the residents from the purchase of worthless obligations for the payment of money in whatever form such obligations took."

While the earlier methods of corporation finance took the form of notes and bonds, on the one hand, and various forms of stock, on the other, new requirements have caused corporations to offer for investment securities combining the two relationships. The mere bringing into combination of the two principal forms of investment does not of itself prevent the combination from constituting a security, or take that which is essentially a security device outside the operation of security laws.

*By the Court.*—Judgment affirmed.