## SECURITIES AND EXCHANGE COMMISSION v. TIMETRUST, Inc., et al.
### No. 21180.

District Court, N. D. California, S. D.
June 10, 1939.

36

Chester T. Lane and O. John Rogge, both of Washington, D. C., Howard A. Judy and E. Forrest Tancer, both of San Francisco, Cal., Sam Harris, of Washington, D. C., John G. Sobieski and Roger Kent, both of San Francisco, Cal., and Herbert B. Cohn, of Washington, D. C., for plaintiff.

John L. McNab, of San Francisco, Cal., for defendant John M. Grant.

Dreher, McClellan & McCarthy, of San Francisco, Cal., for defendant A. P. Giannini.

Theodore M. Stuart, of San Francisco, Cal., for defendant L. Mario Giannini.

Keyes & Erskine, of San Francisco, Cal., for defendant Bank of America Nat. Trust & Savings Ass'n.

Gumpert & Mazzera, of Stockton, Cal., and Bacigalupi, Elkus & Salinger, of San Francisco, Cal., for defendants Timetrust, Inc., Meredith Parker, Ralph W. Wood, and H. E. Blanchett.

ST. SURE, District Judge.

Plaintiff seeks to enjoin defendants from violating Sec. 17(a) of the Securities Act of 1933, as amended.[1] The complaint is filed pursuant to Sec. 20(b),[2] and jurisdiction is conferred by Sec. 22(a) of the Act.[3]

The theory of the Commission's complaint is that defendants Timetrust, Incorporated, Meredith Parker, Ralph W. Wood, and H. E. Blanchett have engaged, and unless enjoined, will continue to engage in activities which are in violation of Sec. 17(a), paragraph (2),[4] an antifraud provision of the Act, and that defendants Bank of America, A. P. Giannini, L. Mario Giannini, and John M. Grant have aided and abetted and participated in, and unless restrained, will continue to aid and abet and participate in such violations by Timetrust, Parker, Wood, and Blanchett. The complaint does not seek to enjoin any further sale of securities by the defendants; the prayer is that the defendants, in the sale of securities by the use of the mails, be enjoined from engaging in acts and practices which constitute a violation of Sec. 17(a).

The complaint alleges that Timetrust was organized in the state of California for the following purposes, among others: To aid in the widespread sale and distribution of Bank of America stock owned or to be acquired by Transamerica Corporation and its subsidiaries and affiliates; to create a constant and ever-increasing interest in and demand for Bank of America stock, thereby stimulating market activity and supporting and increasing the market price of the stock; to effect the placement of Bank of America stock among members of the public.[5]

On July 26, 1938, Timetrust applied to the California Division of Corporations for permission to issue to defendant Parker 250 shares of common stock at $200 per share, and to offer $5,000,000 face amount of Timetrust certificates to the public, which was granted. Such applications are required only when the applicant desires to sell "securities" as that term is defined in the California Securities Act.[6]

Paragraph VII of the complaint charges that, to effect the purposes set out

---

[1] 48 Stat. 84, 15 U.S.C.A. 77q(a).
[2] 48 Stat. 86, 15 U.S.C.A. 77t(b).
[3] 48 Stat. '86, 15 U.S.C.A. 77v(a).
[4] "Sec. 17 [§ 77q]. (a) It shall be unlawful for any person in the sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
"(1) to employ any device, scheme, or artifice to defraud, or
"(2) to obtain money or property by

means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
"(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."
[5] Complaint, par. VI.
[6] General Laws of California, Act 3814, Vol. 1 (1937).

in Paragraph VI, the defendants, in the sale of Timetrust certificates and Bank of America stock by use of the mails, "employed and now are employing a device, scheme, and artifice to defraud the purchasers of such securities." Further allegations give in some detail the manner in which the mechanics of the Timetrust plan have been designed to resemble as closely as possible the operation of a savings bank account "in furtherance of said device, scheme, and artifice to defraud, and to delude and deceive unwary and financially inexperienced persons."

Paragraph VIII charges that the defendants, in the sale of Timetrust certificates and Bank of America stock by the use of the mails, have obtained money and property by means of material misstatements and omissions, and sets out fifteen specific and material representations which defendants are charged with having made or caused to be made in the sale of such securities, and which representations, it is alleged, were false and fraudulent.

The complaint further alleges that the advantages to the investor of this somewhat complicated investment plan are represented by Timetrust, Incorporated, to be: That by "dollar averaging" purchasers can be assured that their payments of equal sums invested periodically in a security with a fluctuating price will buy more shares at lower prices than at higher prices, with the result that the average per share cost of acquisition over a period of years will be lower than the average market price of the securities during the same period; that greater investment efficiency results from a large fund, created by intermingling the funds of many people; that it will enable the purchase of Bank of America stock by the trustee at lower prices than those obtainable by an individual investor; and that there is the prospect of large dividend returns and market appreciation from Bank of America stock.

Each of the several defendants has moved to dismiss, for a more definite statement or bill of particulars, and to strike from the complaint redundant and immaterial matter.

First. The initial contention of defendants is that Timetrust certificates are not securities within the definition of the Securities Act of 1933.[7] Defendants cite but a single case as supporting their contention,[8] a documentary stamp case arising under a statute unrelated to any securities legislation, which is not in point.

Defendants concede that "If a Timetrust certificate constitutes a security, the transactions complained of would involve sales of such security within the meaning of the act."[9]

As shown by the exhibit attached to the complaint, Timetrust certificates[10] are engraved and printed by a banknote com-

---

[7] Sec. 2(1) of the Securities Act, as amended, 15 U.S.C.A. § 77b(1), defines the term security as follows: "The term 'security' means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or in general, any interest or instrument commonly known as a 'security', or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing."

[8] Fidelity Investment Ass'n v. United States, Ct.Cl., 5 F.Supp. 19.

[9] Sec. 2(3) of the Securities Act, 15 U.S.C.A. 77b(3), provides in part: "(3) The term 'sale', 'sell', 'offer to sell', or 'offer for sale' shall include every contract of sale or disposition of, attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value; * * *."

[10] Description of the Timetrust Certificate: Timetrust certificates are offered to the public by Timetrust, Incorporated, in the face amounts of $600 and multiples thereof. The certificate itself is delivered to the purchaser upon written application made to Timetrust, Incorporated. The certificates purport to evidence the purchasers' interests in "separate and individual" trusts created in accordance with a single "Trust Agreement" between Timetrust, Incorporated, and Title Insurance and Guaranty Company, designated as the "Trustee," to which the purchasers of certificates, who are designated as "Trustors," become parties. The Trust Agreement is incorporated by reference into each certificate.

The purchaser of a certificate agrees to pay a stipulated aggregate sum representing the face amount of the certificate, in 120 equal monthly installments. All such payments are received and com-

pany, in form and appearance of stocks, bonds, and other securities.

■ Courts have refused to lay down a hard and fast rule as to what constitutes a security.[11] "It is better to determine in each instance whether a security is in fact of such a character as fairly to fall within the scope of the statute."[12]

■ Stripped to its essentials, Timetrust plan is the familiar one of selling bank stock with a promise of future income or profits. Or, as the Commission says, the plan is one "whereby through the device of what is called a 'trust' and the issuance of a 'trust' certificate the purchaser acquires the certificate and the interest it represents, i. e., Bank of America stock, on a periodic payment basis." The addition of the feature of a "separate and individual trust" under a "trust agreement," which defendants think removes the plan from the statutory definition of security is an attempt at camouflage which fails to hide the real purpose of the plan. "In determining whether or not a transaction involves the issuance of a security, the courts have repeatedly announced that it will look to the substance and not the form of the transaction."[13]

As the Commission points out, the instrument bears all of the indicia of a security.[14] There is the relationship between a person receiving money and a person pro-

mingled by the Trustee, who is required to use all monies paid in by certificate holders, after deduction of various fees, to purchase common stock of Bank of America National Trust & Savings Association in the open market within five business days after cash is available for that purpose in any Trustor's account. The shares purchased are allocated by entries in the accounts of the Trustors at the average net cost of the shares purchased on the particular day in the ratio which the net cost per share bears to the funds expended from each account. However, all shares purchased are commingled and registered in the name of the Trustee; the Trust Agreement specifically authorizes the Trustee to commingle all funds, all Bank shares and all other property of the Trustors. Dividends paid on the Bank shares are, at the option of the Trustors, either distributed to them or reinvested in Bank shares.

The certificate and the Trust Agreement also contain a provision to the effect that the trustors delegate Timetrust, Incorporated to instruct the Trustee in voting the stock entered in their accounts, unless and until the authority is specifically revoked in writing.

The certificate itself is engraved in the form ordinarily used for stocks and bonds. The heading of the certificate includes the usual ornamental and symbolic seal and the instrument is entitled

"Timetrust Certificate
for shares of
Bank of America
National Trust & Savings Association".

Certificates are numbered in order of issuance and are registered by the Trustee. A face amount is stated in the upper right hand corner and on the back of the certificate. Certificates may be assigned to a bank or trust company as security for an obligation of the Trus-

tor, and there is provision for the designation of a beneficiary to whom the interest of the Trustor passes on his death; the certificate is not otherwise assignable or transferable.

[11] State v. Whiteaker, 118 Or. 656, 247 P. 1077, 1079.

The certificate provides for a "creation fee" payable to Timetrust, Incorporated and for a maintenance fee payable to the Trustee. Various fees are also charged upon revocation and in other contingencies. Upon termination of the trust, whether by maturity or revocation, the investor is entitled to receive all full Bank shares credited to his account, plus cash for fractional shares.

[12] State v. Gopher Tire & Rubber Co., 146 Minn. 52, 177 N.W. 937, 938.

[13] Securities & Exchange Comm. v. Wickham, D.C., 12 F.Supp. 245, 247.

[14] People v. Oliver, 102 Cal.App. 29, 36, 282 P. 813; People v. Ferguson, 134 Cal.App. 41, 51, 24 P.2d 965; Mortgage Guarantee Co. v. Welch, 9 Cir., 38 F.2d 184, 186; Hamilton Nat. Bank v. United States, D.C., 14 F.Supp. 736, 738, affirmed, 6 Cir., 99 F.2d 570, 573; Securities & Exchange Comm. v. Wickham, supra; State v. Gopher Tire & Rubber Co., supra; Motter v. Bankers Mtg. Co., 10 Cir., 93 F.2d 778, 780; Commissioner of Banks v. Chase Securities Corp., Mass., 10 N.E.2d 472, 485; National Thrift Corp. v. Welch, D.C., 56 F.2d 1077; Brownie Oil Co. v. R. R. Commission, 207 Wis. 88, 240 N.W. 827, 87 A.L.R. 33; Securities & Exchange Comm. v. Mining Truth Pub. Co., C.C.H. Securities Act Service, par. 30,-015; Lederer v. Fidelity Trust Co., 267 U.S. 17, 21, 45 S.Ct. 206, 69 L.Ed. 494; United States v. Isham, 84 U.S. 496, 504, 17 Wall. 496, 21 L.Ed. 728; Gracchi v. Friedlander, 93 Cal.App. 770, 270 P. 235.

viding it, conferring upon the latter "a present right to a present or a future participation in either the income, profits or assets of a business carried on for profit"; the physical form and appearance of the instrument; general distribution in a common form to a comparatively large number of persons; transferability; limitations upon transferability or negotiability will not defeat identification of the instrument as security, but some provision for alienation is usually found therein; compliance with state securities laws; commingling of payments made, where contributions of many persons are pooled in the operation of the enterprise and administered as a unit by the issuer.

■ The administrative construction placed upon the Act by the Commission is entitled to great weight.[15] "The ingenuity and fertility of resources of those dealers in securities who deliberately attempted to avoid" the application of the state blue-sky laws "supplied the background of experience against which this legislation was written"[16] and has been administered. Since its organization, the Securities and Exchange Commission, and the Federal Trade Commission before it, provided for the registration of interests by appropriate rules and forms. Approximately seventeen issuers have availed themselves of the opportunity to issue several hundred interests similar to those represented by Timetrust Certificates.

■ The Commission points out that the Timetrust certificates fall squarely within several of the categories included in the definition of security,[17] but it is necessary to notice only that of "investment contract." Obviously the instrument is a contract, and the laying out of money in a way intended to secure income or profit from its employment is an "investment" as that word is commonly used and understood.[18]

From what has been said it follows that Timetrust certificates are securities as defined by Sec. 2 of the Securities Act.

Second. Defendants next say that "the only attempt that the complaint makes to bring Timetrust, Inc., or any of the defendants within the operation of the Securities Act of 1933 is the allegation that the acts complained of involved 'the use of the mails,'" and contend that Sec. 17 does not apply to the fraudulent sale of securities by use of the mails wholly within one state. They earnestly urge that in passing the Securities Act, Congress intended only to deal with interstate transactions; that when the Act of 1933 was passed, Sec. 5(c) granted free use of the mails to unregistered state corporations in intrastate business; that the provisions of Sec. 17 did not apply to such transactions; that Sec. 5(c) was repealed in 1934, Act June 6, 1934, § 204, 48 Stat. 906, when Sec. 3 was amended and there was added thereto paragraph (a) (11), 15 U.S.C.A. § 77c (a) (11); that since corporations like Timetrust were exempted from the provisions of the Act of 1933, it follows that they are still exempt, notwithstanding the amendment of 1934.

This argument calls for the consideration of the Act of 1933 and the amendment of 1934.

The Securities Act of May 27, 1933, found in Vol. 48, part one, United States Statutes at Large, begins at page 74 and fills twenty-two printed pages. 15 U.S.C.A. § 77a et seq. The Securities Exchange Act of June 6, 1934 begins at page 881 of the same volume and covers twenty-eight pages. 15 U.S.C.A. §§ 77b et seq., 78a et seq. From an examination of both Acts it is apparent that Congress gave the entire subject matter full consideration, and that in its amended form the Act of 1933 expresses the Congressional intention.

■ Section 17, upon which this suit is based, is the same in Acts of 1933 and 1934. The section contains paragraph (c), reading: "The exemptions provided in section

---

[15] Norwegian Nitro. Prod. Co. v. United States, 288 U.S. 294, 315, 53 S. Ct. 350, 77 L.Ed. 796; Securities & Exchange Comm. v. Associated Gas & Elec. Co., 2 Cir., 99 F.2d 795, 798.

[16] Securities & Exchange Comm. v. Crude Oil Corp., 7 Cir., 93 F.2d 844, 847.

[17] The categories suggested are: (1) "certificate of interest or participation in any profit-sharing agreement," (2) "collateral-trust certificate," (3) "investment contract," (4) "certificate of interest or participation in * * * any of the foregoing." Sec. 2, Securities Act, 15 U.S.C.A. § 77b(1).

[18] State v. Gopher Tire & Rubber Co., supra; People v. Ferguson, supra; Securities & Exchange Comm. v. Wickham, supra, D.C., 12 F.Supp. at page 247.

3 [77c] shall not apply to the provisions of this section." The former Sec. 5(c) relating to certain exemptions applying to intrastate use of the mails was repealed, and in substance re-enacted as Sec. 3(a) (11). In the amendments of 1934 Congress did not change the language of Sec. 17(c), relative to the application of Sec. 3, which defendants would wholly disregard. This provision may not be disregarded, ignored, or peremptorily brushed aside. It represents a legislative mandate and must be taken into account in construing the whole statute.[19]

■ The Commission aptly observes that defendants would "also disregard the * * 'use of the mails' as a basis for jurisdiction in every provision of the Act in which the phrase appears." According to defendants, the only "use of the mails" contemplated by the Act is a mailing from one state to another. But it is obvious that an interstate mailing would be the use of "means or instruments of transportation or communication in interstate commerce," which throughout the Act is set forth as an alternative basis for jurisdiction. To adopt defendants' construction would render nugatory the other jurisdictional phrase "or by the use of the mails."

Twice in Sec. 17, once in paragraph (a) and again in (b), we find the language: "It shall be unlawful for any person * * by the use of any means or instruments of transportation or communication in interstate commerce *or by the use of the mails,*" [20] etc. In this language there are the distinct phrases "by the use of any

means or instruments of transportation or communication in interstate commerce," "or by the use of the mails." Either phrase might be the basis of a charge of statutory violation. Significantly, similar jurisdictional language is to be found in other portions of the Act. It also occurs four times in Sec. 5, and once in Sec. 12, 15 U.S.C.A. §§ 77e, 77l. The language is so plain that it admits of no interpretation.[21] It clearly shows that Congress intended that the provisions of the Act should apply to both interstate and intrastate transactions.

■ While admitting that the Government's interest over the mails is proprietary as well as regulatory, defendants suggest that it would be an arbitrary use of the power to apply it to intrastate business. "The power of Congress over the mails is not limited to the protection of facilities of the mails. It may be exercised to prevent the use of the mails for purposes which it deems objectionable to sound public policy. This power probably may be regarded as even more comprehensive than that exercised over interstate commerce."[22] The power is not unlimited and is subject to the Bill of Rights. But there is nothing in the Constitution which restricts the exercise of the mail power to interstate transactions. "It must be left to congress, in the exercise of a sound discretion, to determine in what manner it will exercise the power it undoubtedly possesses."[23]

■ Reference is made to the title of Sec. 17, "Fraudulent interstate transactions," as evidencing the intention of Con-

---

[19] Washington Market Co. v. Hoffman, 101 U.S. 112, 115, 116, 25 L.Ed. 782, "We are not at liberty to construe any statute so as to deny effect to any part of its language. It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word. As early as in Bacon's Abridgement, sect. 2, it was said that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence or word shall be superfluous, void, or insignificant.' This rule has been repeated innumerable times. Another rule equally recognized is that every part of a statute must be construed in connection with the whole, so as to make all the parts harmonize, if possible, and give meaning to each." See, also, Ex parte Public Nat'l. Bank of New York, 278 U.S. 101, 104, 49 S. Ct. 43, 73 L.Ed. 202; Ginsberg & Sons

v. Popkin, 285 U.S. 204, 208, 52 S.Ct. 322, 76 L.Ed. 704; Lewellyn v. Harbison, 3 Cir., 31 F.2d 740, 742.

[20] Italics supplied.

[21] United States v. Alluan, D.C., 13 F. Supp. 289, 292, "The suggestion that the Securities Act is only directed at interstate commerce is answered by simply a passing reading of the statute which says, 'Or by the use of the mails.'"

[22] Electric Bond & Share Co. v. Securities & Exchange Comm., 2 Cir., 92 F. 2d 580, 588.

[23] In re Rapier, 143 U.S. 110, 134, 12 S.Ct. 374, 36 L.Ed. 93; see, also, Ex parte Jackson, 96 U.S. 727, 732, 24 L. Ed. 877; Public Clearing House v. Coyne, 194 U.S. 497, 506, 24 S.Ct. 789, 48 L.Ed. 1092; Badders v. United States, 240 U.S. 391, 393, 36 S.Ct. 367, 60 L. Ed. 706; Jones v. Securities & Exchange Comm., 2 Cir., 79 F.2d 617, 619, 620.

gress to deal with only those securities sold in interstate commerce. It is only in cases where the language of a statute is ambiguous that the title may be resorted to in resolving doubts.[24] The language being plain and not leading to absurd or wholly impracticable consequences, it is the sole evidence of the ultimate legislative intent.[25]

Defendants also call attention to Sec. 18 of the Act of 1933, which provides for "State Control of Securities"[26], as indicative of the intention of Congress to limit its legislation to activities in interstate commerce. There is no merit in the contention. The most that can be said for the section is that it probably gives concurrent jurisdiction to the Securities and Exchange Commission and the state authorities. There is no doubt that the Securities and Exchange Commission has jurisdiction of the matters here complained of.

Third. Defendants contend that "the complaint fails to state a violation of section 17(a) of the Act in that it is not alleged either that any of the alleged misrepresentations were transmitted through the mails or that such misrepresentations were contemplated, authorized or intended by Timetrust, Incorporated to be made by its officers, agents or sales personnel in furtherance of any device, scheme or artifice to defraud, in connection with which the mails were used."

There is the further objection of defendants John M. Grant, A. P. Giannini, L. Mario Giannini, and Bank of America that the complaint is defective relative to the allegations of their aiding and abetting the actions of defendant Timetrust.

Before entering upon a discussion of these objections, mention will be made of changes that have taken place in the general rules of pleading in the Federal courts.[27]

A pleading shall contain, first, a short and plain statement of the grounds upon which the court's jurisdiction depends; second, a short and plain statement of the claim; and, third, a demand for judgment.[28]

The modern philosophy concerning pleadings is that they do little more than indicate generally the type of litigation that is involved. A generalized summary of the case that affords fair notice is all that is required.[29] Pleadings shall be so construed as to do substantial justice.[30]

After the adoption of the new Rules, they were discussed at meetings of the Institute on Federal Rules of the American Bar Association and the School of Law of Western Reserve University. These discussions took place at meetings held at Cleveland, Washington, and New York. Among those who participated were members of the Advisory Committee appointed by the Supreme Court, who assisted in the preparation of the Rules, and leading lawyers. The proceedings were published in two volumes by the American Bar Association. In a foreword to the first volume, Mr. Arthur T. Vanderbilt, President of the Association, said: "It is for the federal judges and the federal practitioners to determine the spirit in which the new Rules are to be applied. Upon their attitude in dealing with the Rules will depend the future of procedure and, perhaps, of the law itself in the United States. If wisely administered, the Rules should do much to eliminate the complaints of laymen and of lawyers alike as to the technicalities of the law, the subtleties of practice, and the involvements of procedure. Their object must at all times control—'to secure the just, speedy and inexpensive determination of every action.'"

At a meeting in Cleveland, Mr. Charles E. Clark, Dean of the Law School of Yale University and a member of the Advisory Committee, led the discussion upon pleadings and motions. Mr. Clark stated that he heard from a lawyer who

---

[24] Fairport R. Co. v. Meredith, 292 U. S. 589, 594, 54 S.Ct. 826, 78 L.Ed. 1446.

[25] Caminetti v. United States, 242 U. S. 470, 490, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas.1917B, 1168.

[26] "Sec. 18 [§ 77r]. Nothing in this title [subchapter] shall affect the jurisdiction of the securities commission (or any agency or office performing like functions) of any State or Territory of the United States, or the District of Columbia, over any security or any person."

[27] Rules of Civil Procedure for the District Courts of the United States, 28 U.S.C.A. following section 723c, adopted by the Supreme Court of the United States pursuant to the act of June 19, 1934, 28 U.S.C.A. §§ 723b, 723c.

[28] Rule 8(a).

[29] Moore's Federal Practice, Vol. 1, p. 440.

[30] Rule 8(f).

criticized this portion of the Rules. The lawyer said, "Why, a sixteen-year-old boy could plead under these rules!"

"Well, I would say, in answer," observed Mr. Clark, "why not, if he tells the court what his case is about? And that is what we are trying to ask the lawyers to do, and to do quite simply."

It is in this liberal spirit of the new Rules that defendants' criticism of the complaint will be considered.

The complaint, after alleging that Timetrust was formed to aid in the sale of Bank of America stock,[31] further alleges,[32] in the language of the statute, that the defendants, in the sale of said stock, "by the use of the mails employed and are now employing a device, scheme, and artifice to defraud the purchasers of such securities." Further allegations show in detail the mechanics and operation of the plan "in furtherance of said device, scheme, and artifice to defraud, and delude and deceive unwary and financially inexperienced persons."

Paragraph VIII alleges in the language of Sec. 17(a) (2) that the defendants "in the sale of securities, namely, said Timetrust Certificates and said common stock of Bank of America National Trust & Savings Association, by the use of the mails, directly and indirectly, obtained and are now obtaining money and property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." This paragraph also contains fifteen specific representations which defendants are charged with having made or caused to be made in the sale of such securities, and which representations, it is alleged, were false and fraudulent. The complaint, exclusive of the exhibits attached thereto, consists of twenty typewritten pages, at least half of which is devoted to allegations of fraud.

The Securities Act permits of both civil and criminal proceedings. The allegations of the complaint should be as simple as those of an indictment under the provisions of the mail fraud statute.[33] In Hagner v. United States[34] it was said that the true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet. Here the allegations of fraud are not only in the language of the statute, but they are also set forth with particularity so as to apprise the defendants of the charges against them. The complaint not only meets the test of the Hagner case, but fully conforms to the new Rules of Civil Procedure.

Defendants argue that "unless the matter which is directly transmitted through the mails is fraudulent, it must be shown that there was a plan, scheme or device to defraud in furtherance of which innocuous matter was transmitted through the mails." There is no question but that the complaint shows a device, scheme, and artifice to defraud. The character of the matter sent by mail is immaterial.[35]

Defendants stress the point "that the Timetrust plan is not inherently or itself fraudulent or illegal."

The Commission expresses no opinion as to the merits of the Timetrust plan.[36] The suit is not to stop the further sale of Timetrust certificates, but to enjoin the continuance of alleged fraudulent acts and practices which violate Sec. 17(a).

Even though the business be lawful in form and appearance, the defendants may not further the enterprise through the use of fraudulent representations.[37] It is astonishing how many credulous investors there are in the world.[38] The credulity of mankind remains yet unmeasured.[39] That a scheme to defraud would not have deceived one of ordinary intelligence does

[31] Paragraph VI of the complaint.

[32] Paragraph VII of the complaint.

[33] 18 U.S.C.A. § 338.

[34] 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861; see, also, Wheeler v. United States, 9 Cir., 77 F.2d 216, 218.

[35] Badders v. United States, supra; Mounday v. United States, 8 Cir., 225 F. 965, 967; Lewis v. United States, 5 Cir., 259 F. 221; Garvey v. United States, 2 Cir., 4 F.2d 974, 976.

[36] Sec. 23, Securities Act, 15 U.S.C.A. § 77w.

[37] Stephens v. United States, 9 Cir., 41 F.2d 440, 445.

[38] Byron v. United States, 9 Cir., 273 F. 769, 772.

[39] O'Hara v. United States, 6 Cir., 129 F. 551, 555.

not relieve the wrongdoer of liability for using the mails to carry out the deception.[40] The rule of caveat emptor can not be relied upon to reward fraud and deception.[41]

Turning now to the charges of "aiding and abetting." The complaint alleges[42] inter alia that "Timetrust, Incorporated was organized with the active support and assistance * * * and has been and still is being operated * * * with the active support and assistance of defendants A. P. Giannini, L. Mario Giannini, John M. Grant, and Bank of America National Trust & Savings Association"; that "the defendants, Timetrust, Incorporated, Meredith Parker, Ralph W. Wood and H. E. Blanchett, aided and abetted by the defendants A. P. Giannini, L. Mario Giannini, John M. Grant and Bank of America National Trust & Savings Association, have, since on or about August 11, 1938, in the sale of securities, namely, Timetrust Certificates and common stock of Bank of America National Trust & Savings Association, by the use of the mails, employed and are now employing a device, scheme, and artifice to defraud the purchasers of such securities"; and that "from August 11, 1938, Timetrust, Incorporated, and its officers, directors, agents, and sales personnel, with the aid and abetment of defendants A. P. Giannini, L. Mario Giannini, John M. Grant and Bank of America National Trust & Savings Association, in the sale of securities, namely, said Timetrust Certificates and said common stock of Bank of America National Trust & Savings Association, by the use of the mails, directly and indirectly, obtained and are now obtaining money and property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."

■ The present suit, seeking injunctive relief, sounds in fraud, and is similar in many respects to a criminal prosecution. The Criminal Code of the United States[43] provides that whoever aids or abets in the commission of an offense is a principal. Persons charged with aiding and abetting a criminal offense in violation of Sec. 17 (a) may be joined as defendants,[44] and no good reason appears why this same rule should not apply in an injunctive proceeding to restrain a violation of the same statute.

Courts have uniformly held in criminal cases that an allegation of "aiding and abetting" is sufficient without stating the particulars.[45]

■ Under the new Rules[46] "All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action." This rule is based on trial convenience, and is designed to permit the joinder of plaintiffs or defendants whenever there is a common question of law or fact,[47] as here.

■ There is ample authority to support the validity of a suit to enjoin persons who are aiding and abetting the commission of unlawful acts.[48]

■ Fourth: Defendants' motion for a more definite statement or bill of particulars should be denied. If defendants need more definite or detailed information about the claim, they may obtain it through

---

[40] Tucker v. United States, 6 Cir., 224 F. 833, 837. See, also, Federal Trade Comm. v. Standard Education Society, 302 U.S. 112, 116, 58 S.Ct. 113, 82 L. Ed. 141; United States v. Littlejohn, 7 Cir., 96 F.2d 368, 376; Kaplan v. United States, 2 Cir., 18 F.2d 939, 943.

[41] Federal Trade Comm. v. Standard Education Society, supra.

[42] Paragraphs VI, VII, and VIII.

[43] 18 U.S.C.A. § 550.

[44] Coplin v. United States, 9 Cir., 88 F.2d 652; Kaplan v. United States, supra. Cf. Bogy v. United States, 6 Cir., 96 F.2d 734, 741.

[45] Coffin v. United States, 156 U.S. 432, 448, 15 S.Ct. 394, 39 L.Ed. 481; Daniels v. United States, 9 Cir., 17 F.2d 339, 345; Hale v. United States, 8 Cir., 25 F.2d 430, 434; People v. Bishop, 54 Cal. App. 129, 130, 201 P. 328; Anderson v. Board of Medical Examiners, 117 Cal. App. 113, 3 P.2d 344.

[46] Rule 20, "Permissive Joinder Of Parties."

[47] Moore's Federal Practice, Vol. 2, p. 2165.

[48] Board of Trade v. Price, 8 Cir., 213 F. 336, 337; Strutwear Knitting Co. v. Olson, D.C., 13 F.Supp. 384, 392; Beeman v. Richardson, 185 Cal. 280, 284, 196 P. 774.

44

Rules 33 to 37, which provide a simple and expeditious method of discovery.[49]

■ Because of the liberal view taken by the court in holding the complaint sufficient, it is unnecessary to give serious consideration to defendants' motion to strike. Perfection in pleading is rare. There may be allegations in the complaint which might have been more briefly and clearly stated, and some sentences which might properly have been left out, but this kind of criticism could be urged in all cases. Prolixity is a besetting sin of most pleaders. Courts should deal with the substance, and not the form of the language of the pleadings.[50] Where no harm will result from immaterial matter not affecting the substance, courts should hesitate to disturb a pleading.[51] Another consideration, in such circumstances, is that to grant the motion would delay bringing the case to a speedy trial..

The motions of the defendants will be denied, and each allowed ten days to answer.

---

[49] Brinley v. Lewis, D.C., 27 F.Supp. 313, 6 U.S. Law Week p. 1270; Fried v. Warner Bros., D.C., 26 F.Supp. 603, 604; Jessup & Moore Paper Co. v. West Virginia P. & P. Co., D.C., 25 F. Supp. 598, 599; Bicknell v. Lloyd-Smith, D.C., 25 F.Supp. 657, 658; Tarbet v. Thorpe, D.C., 25 F.Supp. 222, 223;

American La France-Foamite Corp. v. American Oil Co., D.C., 25 F.Supp. 386.

[50] United States v. Hyde, C.C., 145 F. 393, 394.

[51] Kraus v. General Motors, D.C., S.D. N.Y., 27 F.Supp. 537, March 2, 1939; cf. Chicago Board of Trade v. United States, 246 U.S. 231, 238, 239, 38 S.Ct. 242, 62 L.Ed. 683.