NORMAN C. ANDERSON, Speaker Wisconsin State Assembly
You have indicated that a special committee of the legislature is presently considering use of the school fund as a capital source for the funding of student loans provided for in sec.39.32, Stats. You have requested my opinion whether and under what conditions the legislature may require the Commissioners of Public Lands to invest monies from the school fund in student loans.
The common school fund was created by Art. X, sec. 2, Wis. Const., as a separate trust fund under the control of the Commissioners of Public Lands. The Attorney General, Secretary of State and Treasurer of the state are designated as the commissioners by Art. X, sec. 7, Wis. Const. Their powers and duties are described in Art. X, sec. 8. Wis. Const., which provides in part:
 ". . . the commissioners . . . shall invest all monies arising from the sale of such lands, as well as all other university and school funds, in such manner as the legislature shall provide . . ."
To answer your question it is necessary to ask, first, whether the language ". . . and shall invest . . . in such manner as the legislature shall provide . . ." affords to the legislature the constitutional power to direct the Board of Commissioners of Public Lands to invest school funds in a particular manner; and second, whether the term *Page 29 
"invest" as used in Art. X, sec. 8, Wis. Const., may include the loaning of monies at interest to students.
The legislature has no power to alter or impair the powers and duties of the commissioners conferred by the constitution. SeeState ex rel. Owen v. Donald (1915), 160 Wis. 21, 151 N.W. 331. However, the constitutional provisions that created and specified the powers and duties of the Commissioners of Public Lands also expressly left other matters to the direction of the legislature.
Since the constitution is not a grant of powers but a limitation upon legislative power, the legislature may adopt any reasonable provisions unless prohibited by some express constitutional provision. State ex rel. Dudgeon v. Levitan
(1923), 181 Wis. 326, 193 N.W. 499. Article X, sec. 8, does not contain any express prohibition upon the enactment of statutes directing that school fund monies be invested in a certain manner or in a particular type of investment and, in fact, it expressly directs that investments be made in a manner provided for by the legislature.
The proceedings of the constitutional convention indicate that the framers of this provision were using the word "shall" in its mandatory sense, and envisioned that the legislature would direct how investments would be made. Quaife, The Attainment ofStatehood, (1928), P. 553. The concerns which led to the establishment of a Board of Public Land Commissioners were related almost entirely to the appraisal and the sale of land rather than matters related to investment practices. The selection of three constitutional officers as commissioners was designed as a check upon the legislative enthusiasm to sell land. Such a check was also felt to be necessary to prevent the appointment of influential private persons as commissioners who might sell land on terms favorable to themselves and their friends. However, the independence of the commissioners guaranteed by the constitutional structure was not envisioned as depriving the legislature of the power to direct the manner of investment of school funds, including those derived from the sale of school lands. 16 OAG 591 (1927).
Although the primary purpose for a constitutionally designated commission was control over land sales, the commissioners are also charged with the duty to invest the school funds. While the legislature may require investment, and may specify allowable *Page 30 
types of investments and procedures for investment, it is my opinion that the legislature may not remove entirely the control of the commissioners over these investments. Thus, the ultimate decision whether or not to make a specific individual investment rests with the Commissioners of Public Lands.
My conclusion as to the division of power over the investment of the proceeds from the sale of school lands and other school funds designates separate spheres of authority for the commissioners and the legislature.
 (a) The commissioners control the sale and appraisal of lands.
 (b) The legislature may require investment and describe the type and manner of investment of school fund monies.
 (c) The commissioners are charged with guarding the integrity of the school fund by insisting that outlays of school fund monies retain their investment character. The ultimate decision whether or not to make a particular individual investment rests with the Commissioners of Public lands.
Directly following the ratification of the constitution, the legislature, in ch. 24, sec. 61, Laws of 1849, made provisions for the investment of the monies received by the school fund. Section 64 of that chapter provided that the commissioners might invest by making loans to any citizen and prescribed an interest rate of seven percent. Thus the intent was manifested that the legislature would specify the particular method and form of investment of school funds. These directions are now found in ch. 25 of the Statutes. Section 25.01, Stats., specifies those investments which are authorized for the common school fund. At present, there is no explicit statutory authorization for investment in student loans.
The Wisconsin Supreme Court has defined investment as "the placing of capital or laying out of money in a way intended to secure income or profit from its employment . . ." Brownie OilCo. v. Railroad Commission (1932), 207 Wis. 88, 240 N.W. 827. This definition is broad enough to include the making of loans at interest. *Page 31 
It should be emphasized that, although the term "investment" in Art. X, sec. 8, may be given a rather broad interpretation, it nevertheless operates to limit legislative power over school funds. Thus, to the extent that legislative enactments authorize no investments, but direct grants of school fund monies for the operation of state agencies, they violate constitutional restrictions. State ex rel. Owen v. Donald, supra. The placement of school fund monies must be in fact in the nature of a true investment.
You have advised that student loans under sec. 39.32, Stats., bear interest at a rate of 7 percent, and are guaranteed as to both interest and principal by the federal government. Thus, although it is conceivable that a particular type of loan might carry such a low rate of interest that it would lose its character as an investment, this does not appear to be the case with the higher educational aids loans authorized under sec.39.32, Stats. It is therefore my opinion the legislature has the power to authorize the use of school fund monies for the student loan program.
BCL:RDR