[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
In this action the plaintiff, Elizabeth Justice, moves for summary judgment for the reason that there is no issue of material fact, and as a matter of law the defendant, James Gardner, is liable to her under the Connecticut Uniform Securities Act (CUSA). The plaintiff submitted a Memorandum in Support of this motion, as well as supporting exhibits. The defendant, appearing pro se, filed a Memorandum in Opposition, and various documents[1] both during and after oral argument, which this court heard on June 4, 2002.
Facts
At various times between May of 1999 and June of 2000, the plaintiff purchased eight pay telephones, as well as service agreements relating to the maintenance and operation of the telephones. The phones were purchased from a company entitled ATC, Inc., through James Gardner, an agent of ATC., Inc., who is not a registered dealer/broker under CUSA. While the sales agreement provided the plaintiff with the option to hire one of a number of servicing companies, the plaintiff signed a service agreement with Alpha Telecom, Inc. the parent company of ATC, Inc. In CT Page 10534 exchange for maintaining and servicing the telephones, Alpha Telecom would receive 70% of the "Adjusted Gross Revenues."[2] If the "Adjusted Gross Revenues" in a given month did not exceed the "Base Amount,"[3]
the plaintiff would be entitled to 100% of the "Adjusted Gross Revenues." The sales and service agreements signed by the plaintiff clearly indicate that the ownership and operation of pay telephones is speculative, as well as a risk. The agreements prominently declare that the transaction is not a security, or registered with either the federal or state Security and Exchange Commissions. Nonetheless, the plaintiff purchased the phones and service agreement with the expectation that she would derive a profit from them.
The service agreement also provided for a "Buy Back Election," whereby the purchaser could elect to sell the equipment back to ATC, Inc., for the purchase price minus various time dependent fees. After three years, the purchaser could resell the equipment to ATC, Inc., for the full purchase price. In February 2002, the plaintiff attempted to tender the equipment back to the defendant, who never responded to the tender. The plaintiff filed this action alleging that the sale of the pay phones and service agreement by the defendant constituted the sale of unregistered securities by an unregistered dealer/broker in violation of Connecticut General Statutes § 36b-2, et seq. The plaintiff is seeking monetary damages and attorneys' fees pursuant to Connecticut General Statute § 36b-29 (b)(1), which states:
(b)(1) Any person who violates subsection (a) of section 36b-5 and (2) any investment adviser who violates subsection (b) or (c) of section 36b-5, the registration requirement in subsection (c) of section 36b-6, or subsection (b) of section 36b-24, shall be liable to the recipient of investment advisory services for any consideration paid by the recipient for those services and any loss resulting from the investment advisory services provided, less any profits earned by the recipient through transactions effected as a result of the advice rendered, plus interest at the rate of eight per cent per year from the date of payment of the consideration, costs and reasonable attorney's fees.
Discussion
Practice Book [§ 17-491 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . ." In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles CT Page 10535 of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Miles v.Foley, 253 Conn. 381, 385-86, 752 A.2d 503 (2000). "The test is whether a party would be entitled to a directed verdict on the same facts." Sherwoodv. Danbury Hospital, 252 Conn. 193, 201, 746 A.2d 730 (2000).
"Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way. . . . The movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . [A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party. . . . [A] directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." Morascini v. Commissioner of PublicSafety, 236 Conn. 781, 808-09, 236 A.2d 1340 (1996).
There is no dispute as to the fact that the sale of the payphones and service contract by the defendant to the plaintiff was not a transaction registered under CUSA. Furthermore, the defendant does not contest that he is not registered as a broker/dealer. Therefore, the remaining question is one of law: was the transaction a security governed by the Connecticut Uniform Securities Act?
Section 36b-3 (7) of CUSA states that "Covered Security" has the meaning given to that term in Section 18(b) of the Securities Act of 1933. In § 2(1) of the Securities Act of 1933 "security" is defined as ". . . any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a `security,' or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing."
The plaintiff argues that the sale at issue here was an investment contract; therefore, a security as defined by CUSA. The United States Supreme Court addressed the definition of "investment contract" inS.E.C. v. Howey, Co., 328 U.S. 293, 298, 90 L.Ed. 1244, 66 S.Ct. 1100
(1946). CT Page 10536
"The term "investment contract" is undefined by the Securities Act or by relevant legislative reports. But the term was common in many state "blue sky" laws in existence prior to the adoption of the federal statute and, although the term was also undefined by the state laws, it had been broadly construed by state courts so as to afford the investing public a full measure of protection. Form was disregarded for substance and emphasis was placed upon economic reality. An investment contract thus came to mean a contract or scheme for "the placing of capital or laying out of money in a way intended to secure income or profit from its employment." State v. Gopher Tire Rubber Co., 146 Minn. 52, 56,177 N.W. 937, 938. This definition was uniformly applied by state courts to a variety of situations where individuals were led to invest money in a common enterprise with the expectation that they would earn a profit solely through the efforts of the promoter or of some one other than themselves."
The purchase of payphones and the service contracts by the plaintiff was an investment of money by her, in a common enterprise, with the expectation that she would gain profits from this investment. The criteria for an "investment contract" as articulated in S.E.C. v. Howey
are met in this instance. See: S.E.C. v. Alpha Telcom, Inc., CV 01-1283 PA. 2002 U.S. Dist LEXIS 2617 (Feb. 7, 2002). The sale of the payphones and service contracts, therefore, constitutes the sale of a security under the Connecticut Uniform Securities Act. Because neither the transaction or the defendant was registered as required by the act, the defendant in violation of the act and subject to the provisions of Connecticut General Statute § 36b-29.
For the above reasons, this court grants the plaintiff's Motion for Summary Judgment as to liability. As to the amount of damages and attorneys' fees, this court requires additional evidence to make a fair and reasonable determination. Accordingly, this matter will be scheduled for a hearing in damages.
 ___________________, J. CAROL A. WOLVEN