Argued July 2, affirmed July 20, rehearing denied September 14, 1926.

# STATE *v.* W. HARRISON WHITEAKER AND GEORGE L. JENNINGS.

### (247 Pac. 1077.)

**Licenses—Instrument Reciting Payment for "Units of Interest" in Copartnership Held Within Act Prohibiting Sale of "Securities" Without License (§§ 6838, 6840, 6843, Or. L., as Amended by Laws 1921, p. 790, and § 6839, as Amended by Laws 1921, p. 316).**

1. Instrument reciting payment for "units of interest" in copartnership *held* within Sections 6838, 6840, 6843, Or. L., as amended by Laws of 1921, page 790, and Section 6839, as amended by Laws of 1921, page 316, prohibiting sale of "securities" without license.

**Licenses—"Securities" in Blue Sky Laws Means Written Assurances for Return or Payment of Money, Evidence of Indebtedness, Investment of Funds in Designated Part of Concern's Assets and Capital, With View of Receiving Profits Through Others' Efforts.**

2. "Securities," as used in Blue Sky Laws, means written assurances for return or payment of money, evidences of indebtedness, investment of funds in designated portion of concern's assets and capital, with view of receiving profit through others' efforts, and includes security or investment contracts or speculative securities, but not ordinary commercial contracts or profits made by one's own efforts as result thereof, nor interest on money loaned.

**Licenses.**

3. Term "securities" in Blue Sky Law (§§ 6838, 6840, 6843, Or. L., as amended by Laws of 1921, p. 790, and § 6839, as amended by Laws of 1921, p. 316), is used in broad, not literal, sense.

**Licenses.**

4. That "units of interest," sold without license, were in unorganized company or association, is immaterial as respects violation of Blue Sky Law.

**Criminal Law—Letter from Defendant as to Sale of "Units of Interest" in Copartnership by Addressee Held Competent to Show That Defendant was Offering Them for Sale to General Public (Blue Sky Law [Laws 1913, p. 668]).**

5. In trial for violating Blue Sky Law by selling "units of interest" in copartnership without license, letter from defendant to purchaser, stating that it was too risky to sell in certain state, but that she might write to friends that she could get them some, *held* competent to show that defendant was offering them for sale to general public.

Licenses—Testimony as to Defendant's Representations of Nature of Enterprise Held Admissible to Show Dealing in Securities in Violation of Blue Sky Law, Though Prejudicial to Defendant (Laws 1913, p. 668).

6. In trial for violating Blue Sky Law, testimony as to defendant's representations of nature of enterprise in which witnesses were investing *held* admissible to establish course of dealing in securities sold, though defendant's cause was prejudiced by disclosure of his visionary scheme.

Criminal Law—Testimony That Records of State Corporation Commission, With Which Witness was Familiar, Showed No Permit to Defendant to Sell Securities, Held Admissible (Blue Sky Law [Laws 1913, p. 668]).

7. In trial for violating Blue Sky Law, testimony of attorney for state Corporation Commission that examination of its records, with which he was familiar, disclosed no permit to defendant to sell securities, *held* admissible as against objection that records were best evidence.

Criminal Law.

8. Record need not be produced to establish nonexistence of something.

Criminal Law—Production of Records Showing no Permit to Defendant to Sell Securities Held Unnecessary, in View of Admission of Defendant's Counsel in Open Court.

9. Production of state Corporation Commission's records, showing no permit to defendant to sell securities, *held* unnecessary, in view of admission by defendant's counsel in open court that defendant did not claim to have had permit.

Criminal Law.

10. Admissions in open court by prosecuting officer or accused's counsel are conclusive.

Licenses—Evidence That Defendant Acted in Good Faith on Advice of Counsel in Selling Securities Without Permit Held Inadmissible (Blue Sky Law [Laws 1913, p. 668]).

11. In trial for selling securities without permit, in violation of Blue Sky Law, evidence that defendant acted in good faith on advice of counsel that sale was not in violation of law, *held* inadmissible.

Licenses.

12. Defendant's good faith in selling securities without permit, in violation of Blue Sky Law, is immaterial.

---

Criminal Law, 16 C. J., p. 612, n. 89, p. 891, n. 77.
Licenses, 37 C. J., p. 273, n. 72, p. 275, n. 10, 15, 16, p. 276, n. 18, 20, p. 278, n. 69, p. 279, n. 72.

10. See 1 R. C. L. 469.

From Multnomah: GEORGE G. BINGHAM, Judge.

Department 2.

Defendants were convicted of violating the "Blue Sky Law" in that they sold certain "securities" without first having obtained a license or permit from the State Corporation Commissioner. Defendant Whiteaker died pending appeal, so we are concerned only with the judgment of conviction against the other defendant.        AFFIRMED. REHEARING DENIED.

For appellants there was a brief over the name of *Mr. George Arthur Brown,* with an oral argument by *Mr. Francis McDannell Brown.*

For respondent there was a brief over the name of *Mr. Stanley Myers,* District Attorney, with oral arguments by *Mr. Samuel H. Pierce* and *Mr. Jay H. Stockman,* Deputies District Attorney.

BELT, J.—Whiteaker claimed to have invented an electrical device which would extract gold from the waters of Mono Lake, California. In order to promote this scheme certain "units of interest" were offered to the public. Defendant Jennings "had charge of the sales that were made." One Pearl Williams—a "beauty culturist"—became interested as evidenced by the following writing:

"Be it known: That whereas, W. Harrison Whiteaker, having made a valuable mineral discovery, is desirous of obtaining financial assistance for the establishment of a plant in connection therewith, and for the defraying of expenses incidental thereto, including the securing of further finances for this purpose; and

"Whereas, Pearl L. Williams is willing to assist said Whiteaker with, and is desirous of partaking in the benefits to be derived from the said venture.

"Therefore, the said Pearl L. Williams for the purposes above mentioned, has paid unto the said W. Harrison Whiteaker the sum of two hundred dollars, the receipt of which is hereby acknowledged, and shall receive therefor two units of interest in a co-partnership for the development of said project, and in said plant and the business thereof, the total number of units of interest being two thousand (2000) or less in the discretion and judgment of said W. Harrison Whiteaker.

"It is agreed that the said W. Harrison Whiteaker shall be the General Manager of the business of said co-partnership, and shall have full charge of the same, and shall direct the general policy of said business.

"Dated Oct. 20th, 1921.

　　　　　　　"(Signed) W. HARRISON WHITEAKER.

"Approved:

　　　　　　　"(Signed) PEARL L. WILLIAMS."

The vital question is whether the above instrument, which is set forth in the indictment, comes within the purview of the statute regulating the sale of "securities."

Section 6838, Or. L., as amended by Chapter 400, Laws of Oregon for 1921, provides:

"The word 'dealer' within the meaning of this act shall include every person, partnership, corporation or association which is now engaged, or which shall hereafter engage, in the selling or in the buying for the purpose or in the contemplation of selling, (of) any stock, stock certificates, bonds, debentures, notes, contracts, membership certificates or securities of whatsoever kind or character, all hereinafter termed 'securities'; * * "

Section 6839, Or. L., as amended by Chapter 168, Laws of Oregon for 1921, in substance provides that

certain information be filed with the Corporation Commissioner before "dealers" shall offer for sale such "securities" or "promote by advertisement, circular or any other form of public or general offering." Section 6840, Or. L., as amended by Chapter 400, Laws of Oregon for 1921, provides the manner and method of obtaining a permit to do business as a dealer "and to handle such stocks, bonds, notes, contracts or other securities in the state of Oregon as are not objected to by the corporation commissioner." Section 6843, Or. L., as amended by Chapter 400, Laws of Oregon for 1921, makes it "unlawful for any dealer or his agent to issue, circulate or deliver any advertisement, pamphlet, circular, or document in regard to such securities * * until after such dealer shall have been licensed to sell such securities in the State of Oregon * * ."

1, 2. The trial court properly instructed the jury as a matter of law that the instrument set forth in the indictment came within the purview of the statute and could not be issued by the defendants as dealers in "securities" without their first having obtained a license from the Corporation Commissioner. It is plain from the instrument upon which this prosecution is based that Pearl L. Williams parted with her money upon the implied agreement that she was to share in the profits or income of this enterprise. As stated in 37 C. J. 275:

"The term 'securities' as used in these laws, means written assurances for the return or payment of money, evidences of indebtedness, * * . It means the investment of funds in a designated portion of the assets and capital of a concern, with a view of receiving a profit through the efforts of others than the investor; and in this sense includes what are termed 'security' or 'investment' contracts or 'speculative

securities.' But it does not extend to ordinary commercial contracts, nor does it include interest income from the lending of money, or the profits which one might make by his own efforts as the result of any ordinary commercial contract.''

3. It was the intention of the legislature to use the term "securities" in a broad sense, not a literal one: *State* v. *Gopher Tire & Rubber Co.*, 146 Minn. 52 (177 N. W. 937). For interpretation of "securities" used in similar statutes see *State* v. *Hudson*, 214 Mo. App. 260 (259 S. W. 877); *State* v. *Evans*, 154 Minn. 95 (191 N. W. 425, 27 A. L. R. 1165); *Groby* v. *State*, 109 Ohio St. 543 (143 N. E. 126); *People* v. *McCalla*, 63 Cal. App. 783 (220 Pac. 436); *State* v. *Gopher Tire & Rubber Co., supra.*

We do not deem it advisable to lay down any hard-and-fast rule to determine whether similar offerings to the public may be sold without a license. Were we to do so, a certain class of gentlemen of the "J. Rufus Wallingford" type—"they toil not neither do they spin''—would lie awake nights endeavoring to conceive some devious and shadowy way of evading the law. It is more advisable to deal with each case as it arises. Suffice it to say, in the cause now before us, we are clearly convinced that the instrument in question comes within the letter and spirit of the Blue Sky Law.

4. It is immaterial that these "units of interest" were in a company or association yet unorganized: *Groby* v. *State, supra.* The statute is designed for the protection of the public. There is more reason for the application of this law to unorganized business concerns than to those having a recognized legal entity. The corporation commissioner would undoubtedly be more hesitant in granting a permit to sell

"securities" in a future or contemplated business enterprise than in an established and going concern. There is more uncertainty and speculation in the former class of investments.

5. Appellant contends error was committed by receiving in evidence a letter from defendant Jennings to Mrs. Pearl L. Williams, as follows:

> "Portland, Oregon, October 13th, 1922.
> "Mrs. Pearl L. Williams,
>      "C/o 181 E. 16th St.,
>          "Portland, Oregon.
> "My Dear Mrs. Williams:—
>
> "After having taken the matter of your going to Los Angeles with Mr. Whiteaker we are of the opinion that it is too risky to attempt to sell in that state. However, if you know of some of your friends whom you can write to and simply state that if they still want some of it you can get them some for a few days as we are putting on another kind of a machine which will require a little more money, but be careful and not elaborate on the thing too much or your efforts might be mistaken as bordering on salesmanship.
>
> "Am sorry that this condition exists as I am sure that you could sell perhaps all we would want, but it would be a calamity to get you or us in trouble as I am quite sure that we will all be quite comfortably fixed in a short time.
>
> "With kindest regards to you, I am,
>          "Sincerely yours,
>              "(Signed) Geo. L. Jennings."

This evidence was competent to show that defendant was dealing with these "units of interest" and offering them for sale to the general public. It was necessary for the State to establish, not an isolated sale, but, as charged in the indictment, "repeated and continuous transactions of a similar nature." Other evidence disclosed numerous sales. While it is not material, it is significant from the above letter that

defendant knew he was "playing with fire." It is not surprising that those who are ever in the shadow of the border line should occasionally step over.

6. There is no merit in the contention that it was improper to permit various witnesses to relate representations made by defendant to them as to the nature and character of the enterprise in which they were investing. This evidence tended to establish a course of dealing in the "securities." When these witnesses told of the wild and visionary scheme of taking gold from the waters of Mono Lake, it may be that defendant was not glorified in the eyes of the jury and that his cause was thereby "prejudiced," but it does not follow that the evidence was inadmissible. It was, indeed, proper for the state to show that various sales of a similar nature were made.

7, 8. Error is predicated in permitting A. E. Gebhart, then attorney for the State Corporation Commission and familiar with its records, to testify that an examination of the same disclosed no permit to sell "securities" had been issued to defendant Whiteaker. Appellant contends that the records of the Commission is the best evidence. It is not necessary, indeed it is frivolous, to produce a record for the purpose of establishing the nonexistence of something. In *Cowan* v. *Corbett,* 68 Ga. 66, the rule is thus tersely stated:

"We know of no better mode of proving what is not on the record than to prove this negative by those who were, and are, keepers of the records, and who are presumed to be familiar with their contents. The record would not affirmatively prove what was not on it, and we think the parol proof competent for that purpose."

9, 10. Furthermore, defendants never contended that any license or permit had been issued to them. In the

opening statement to the jury counsel for appellant, in response to the inquiry from the court, "Do you claim to have had a permit from the Corporation Department to sell these (referring to 'securities')?" answered, "No, your Honor, I claim this: that I drew up a receipt which, according to my notions, conformed with the Blue Sky Law, did not conflict with it." It was not necessary for the prosecution to prove that which was admitted in open court: 16 C. J. 891. Such admissions are conclusive, whether made by the prosecuting officer or counsel for the accused, and the same rule obtains in criminal as well as in civil cases: *People* v. *Cory,* 124 Misc. Rep. 532 (208 N. Y. Supp. 768). In *State* v. *Wilson,* 166 Iowa, 309 (144 N. W. 47, 147 N. W. 739), the court said:

"It is elementary that admissions made in the course of judicial proceedings are substituted for and dispense with actual proof of facts." Citing *Commonwealth* v. *Desmond,* 5 Gray (Mass.), 80; *People* v. *Ross,* 115 Cal. 233 (46 Pac. 1059); *Godwin* v. *State,* 1 Boyce (Del.), 173 (74 Atl. 1101, Ann. Cas. 1913E, 940).

11, 12. Defendant introduced evidence to the effect that in selling these securities he acted in good faith and upon advice of counsel that it was not in violation of law. Error is assigned on the refusal of the court to instruct the jury relative to this phase of the case. This evidence was clearly inadmissible. It would be a strange doctrine which would permit the operation of statutes thus to be suspended. The alleged good faith of defendant was wholly immaterial. As stated in *People* v. *McCalla, supra:*

"If the advice of counsel could afford immunity to one accused of the violation of a penal statute, it would result in the advice of an attorney being paramount to the law. 'Ignorance of the law,' says the

Rhode Island Supreme Court in *State* v. *Foster,* 22 R. I. 163 (46 Atl. 833, 50 L. R. A. 339), 'will not excuse its violation, even when one endeavors to ascertain the law and is misled by advice of counsel.' In that case it was held that a violation of a statute against engaging without a license in the temporary or transient sale of goods is not excused by advice of a state official to the effect that the law did not apply to the person who is charged with its violation, and who was not misled as to the facts, but only as to the law. See, also, Wharton's Criminal Law, vol. 1 (11 ed.), § 379.''

Under the undisputed testimony there was no issue of fact involved. It was purely a legal question of whether the writing under consideration came within the term "securities" as used in the statute. The trial court instructed the jury that it did and in this conclusion we concur.

It follows that the judgment of conviction is affirmed.       AFFIRMED.   REHEARING DENIED.

McBRIDE, C. J., and BEAN and BROWN, JJ., concur.