Filed 7/29/16

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C077269 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F08251) |
| v. | |
| DYWON LEVELL BYRD, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Michael P. Kenny, Judge. Reversed in part and affirmed in part.

Steven Schorr, under appointment by the Court of Appeal, for Defendant and Appellant.

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of Part I.

1

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez, Marcia A. Fay, Deputy Attorney General, for Plaintiff and Respondent.

A jury found defendant Dywon Levell Byrd guilty of first degree murder (Pen. Code, § 187, subd. (a); count 1) and driving in willful or wanton disregard for the safety of persons or property while fleeing from a pursuing police officer (Veh. Code, § 2800.2, subd. (a); count 3).[1] The jury found true the special allegation that defendant used a firearm in committing first degree murder. (Pen. Code, § 12022.53, subd. (b).)[2] The trial court sentenced defendant to 25 years to life for first degree murder, a consecutive 25 years to life on the firearm allegation, plus a consecutive two-year sentence for driving in willful or wanton disregard for the safety of persons or property while fleeing from a pursuing police officer.

On appeal, defendant contends the trial court erred in instructing the jury with the last bracketed paragraph of CALCRIM No. 226. He further contends that his conviction for violating section 2800.2 is not supported by substantial evidence because there was no proof that either of the pursuing officers wore a distinctive uniform. As we will explain in the published portion of our opinion, we agree with the latter contention. We will reverse count 3 (§ 2800.2, subd. (a)) and order it dismissed. We affirm the judgment in all other respects.

## BACKGROUND

At around midnight on December 7, 2011, Sacramento Police Officer Robert Hamm was dispatched to a residence on Samos Way in response to a report of a shooting. When he arrived at the residence, he observed two vehicles parked in the driveway, one

---

[1] Further undesignated statutory references are to the Vehicle Code.

[2] The jury acquitted defendant of count 2, attempted murder.

2

of which had its engine running. Inside that vehicle was the victim, who had been shot in the neck.

On the same night at approximately 12:10 a.m., Sacramento Police Officers Carl Chan and David DeLeon were on patrol in a fully marked traditional black and white police car near Samos Way when they observed a silver sport utility vehicle (SUV) driving without its headlights on. The SUV did a "burn out" and accelerated at a high rate of speed away from the officers. Officer DeLeon activated the patrol car's emergency overhead red and blue lights and attempted to initiate a traffic stop. The SUV initially slowed and started to yield but then suddenly accelerated and drove off. Officer DeLeon activated the patrol car's siren and a high-speed pursuit ensued, ending when the driver, later determined to be defendant, stopped his vehicle and fled on foot. A perimeter was established by law enforcement officers, and defendant was apprehended and arrested several hours later. We will supply the relevant details of the evading conviction in Part II of the Discussion, *post*.

## DISCUSSION

### I

### *CALCRIM No. 226*

Defendant first contends the trial court erred by instructing the jury with the last bracketed paragraph of CALCRIM No. 226. That paragraph states: "If you decide that a witness deliberately lied about something significant in this case, you should consider not believing anything that witness says. Or, if you think the witness lied about some things, but told the truth about others, you may simply accept the part that you think is true and ignore the rest." Defendant argues that this paragraph should not be given in a case where, as here, the defendant testifies. He reasons as follows: "The instruction's last paragraph encouraged the jury to consider rejecting the entirety of a witness's testimony if it decided he lied about an important fact, thereby creating a permissive inference of discarding the evidence as a complete falsehood based on a single prevarication. Because

3

persons accused of crimes are uniquely vulnerable to arguments positing they have a motive to lie to avoid conviction and therefore are very likely lying, such an inference is inherently more burdensome to defendants in criminal cases than to other witnesses." According to defendant, "applying the . . . [permissive] inference to testifying defendants undermines the presumption of innocence and denies them due process and a fair trial." He asserts that the trial court's error in instructing the jury with the last bracketed paragraph of CALCRIM No. 226 affected his "substantial rights to due process of law, jury trial and an accurate determination of guilt under the United States and California Constitutions."

The People first assert that defendant forfeited his right to challenge CALCRIM No. 226 by failing to object to the instruction in the trial court. We will review the issue on the merits because defendant's failure to object to the instruction does not preclude review for constitutional error. "The appellate court may . . . review any instruction given, . . . even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby." (§ 1259; *People v. Guerra* (2006) 37 Cal.4th 1067, 1138.) Instructional errors resulting in a miscarriage of justice violate the substantial rights of a defendant. (*People v. Arredondo* (1975) 52 Cal.App.3d 973, 978.) Thus, we proceed to examine the instruction to assess whether the trial court erred in giving CALCRIM No. 226.

We find no instructional error. Defendant acknowledges that our Supreme Court has rejected similar arguments against the predecessor instruction, CALJIC No. 2.21.2,[3] but argues that CALCRIM No. 226 "provides stronger encouragement" to the jury to

---

[3] CALJIC No. 2.21.2 provides: "A witness, who is willfully false in one material part of his or her testimony, is to be distrusted in others. You may reject the whole testimony of a witness who willfully has testified falsely as to a material point, unless, from all the evidence, you believe the probability of truth favors his or her testimony in other particulars."

4

reject the entirety of a defendant's testimony "based upon a single material falsehood." Defendant also acknowledges that his arguments were rejected in *People v. Warner* (2008) 166 Cal.App.4th 653. In *Warner,* the Fifth Appellate District concluded that CALCRIM No. 226 and CALJIC No. 2.21.2 are both "facially neutral instructions that apply to all witnesses who testify at trial and that focus no more on the defendant's testimony than on that of any other witness." (*Warner*, at p. 658.) Moreover, since the "semantic differences between CALCRIM No. 226 and CALJIC No. 2.21.2 are [not] even material, let alone prejudicial," the *Warner* court rejected the defendant's "challenge to the former by deferring to a long line of California Supreme Court cases rebuffing analogous challenges to the latter." (*Warner*, at p. 659.)

We conclude that *Warner's* analysis is persuasive and dispositive of defendant's arguments regarding the trial court's use of CALCRIM No. 226. Contrary to defendant's contention, CALCRIM No. 226 does not "create[] a permissive inference by telling jurors they 'should' disbelieve everything a witness coming with the scope of the instruction has said." The instruction merely directed the jurors to *consider* not believing anything a witness says if they decide the witness deliberately lied about something significant; it does not state that the jury *should not believe* anything that witness says if they decide the witness deliberately lied about something significant. (See *People v. Warner, supra*, 166 Cal.App.4th at p. 658.)

## II

### *Sufficiency of the Evidence*

Defendant contends that his conviction for violating section 2800.2 is not supported by substantial evidence because there was no proof that either of the pursuing officers wore a distinctive uniform. We agree, because *no* evidence was presented, by either party, to support this essential element of the offense.

5

A. *Applicable Law*

A person violates section 2800.2 if he "flees or attempts to elude a pursuing peace officer in violation of Section 2800.1 and the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property." (§ 2800.2, subd. (a).) Section 2800.1 provides that a person operating a motor vehicle is guilty of fleeing or attempting to elude a pursuing peace officer's motor vehicle if all of the following conditions exist: (1) the peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp; (2) the peace officer's motor vehicle is sounding a siren as may be reasonably necessary; (3) the peace officer's motor vehicle is distinctively marked; and (4) the peace officer's motor vehicle is operated by a peace officer, *and that peace officer is wearing a distinctive uniform*. (§ 2800.1, subd. (a), italics added.) "Thus, the statute requires four distinct elements, each of which must be present: (1) a red light, (2) a siren, (3) a distinctively marked vehicle, and (4) a peace officer in a distinctive uniform." (*People v. Hudson* (2006) 38 Cal.4th 1002, 1008 (*Hudson*).) The prosecution must prove each element beyond a reasonable doubt. (*People v. Acevedo* (2003) 105 Cal.App.4th 195, 197-198.)

For purposes of section 2800.2, "a law enforcement officer's 'distinctive uniform' is the clothing prescribed for or adopted by a law enforcement agency which serves to identify or distinguish members of its force." (*People v. Mathews* (1998) 64 Cal.App.4th 485, 490.) "The statute does not require that the uniform be of any particular level of formality or that it be complete." (*People v. Estrella* (1995) 31 Cal.App.4th 716, 724.) Nor does the statute require that the person eluding capture actually see that the police officer is wearing a distinctive uniform. (*Ibid.*)

To assess the sufficiency of the evidence, we review the whole record to determine whether it discloses substantial evidence to support the verdict--i.e., evidence that is reasonable, credible, and of solid value--such that a reasonable trier of fact could find the

6

defendant guilty beyond a reasonable doubt. (*People v. Maury* (2003) 30 Cal.4th 342, 396.) "The standard is the same, regardless of whether the prosecution relies mainly on direct or circumstantial evidence. [Citation.]" (*People v. Vazquez* (2009) 178 Cal.App.4th 347, 352.) In applying the standard, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. (*People v. Boyer* (2006) 38 Cal.4th 412, 480.) " '[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding.' [Citation.] We do not reweigh evidence or reevaluate a witness's credibility. [Citation.]" (*People v. Guerra, supra,* 37 Cal.4th at p. 1129.)

The officers testified that they were assigned to the patrol unit of the Sacramento Police Department, which involved basic patrol duties such as responding to calls for service and performing proactive policing. The officers were on patrol in a fully marked traditional black and white police car, and the car's siren and emergency overhead red and blue lights were activated during the pursuit of defendant. At trial, defendant admitted that he saw the patrol car behind him with its lights on, and that he made a conscious decision to flee from the police. However, no direct evidence was presented at trial demonstrating that either officer was wearing a distinctive uniform. None of the witnesses at trial testified as to the officers' attire, nor is there any other evidence in the record about the officers' attire.

The People cursorily argue only that the jury could have reasonably inferred that the officers wore a distinctive uniform because they were assigned to the patrol unit and were on patrol in a marked police vehicle at the time of the pursuit, and because defendant admitted to knowing the police were chasing him. However, they point to no actual evidence that either officer wore a distinctive uniform within the meaning of

7

section 2800.1. We see no such evidence in the record. Nor do they cite any authority for the argument that such an inference is even potentially proper.

The fact that the officers were assigned to the patrol unit and were in a patrol car at the time of the pursuit is not sufficient to prove that either officer was wearing a police uniform or other distinctive police attire. To infer evidence of a distinctive uniform rather than plainclothes or another less than distinctive outfit from the evidence in the record before us would be pure speculation. (See *People v. Shakhvaladyan* (2004) 117 Cal.App.4th 232, 238 [reversing conviction under section 2800.2 because the record "did not include any reference to the fact that . . . [the officer] wore a distinctive uniform"], disapproved on other grounds by *Hudson, supra*, 38 Cal.4th at pp. 1009-1011, fn. 3.)

The People do not provide any authority in support of their brief argument that we should look to proof introduced to satisfy the other elements (that these were peace officers on patrol in a marked car) as a substitute for proof satisfying the distinctive uniform requirement, and we are aware of none. In *Hudson*, our Supreme Court concluded that, in order for a peace officer's vehicle to be distinctively marked within the meaning of section 2800.1, its outward appearance during the pursuit must include, in addition to the separate statutory requirements of a red light and a siren, one or more features that are reasonably visible to other drivers and distinguish it from vehicles not used for law enforcement so as to give notice to the person being pursued that the pursuit is by the police. (*Hudson, supra*, 38 Cal.4th at pp. 1010-1011.) In so concluding, *Hudson* disapproved *People v. Chicanti* (1999) 71 Cal.App.4th 956, and *People v. Shakhvaladyan, supra*, 117 Cal.App.4th 232, both of which held that a red light and a siren could be considered along with the totality of the circumstances in determining whether a pursuing police vehicle is distinctively marked. (*Hudson*, at pp. 1009-1011, fn. 3.) The court explained, "[I]n determining whether the pursuing police vehicle is distinctively marked, a jury may consider *only* the distinguishing features of the vehicle

8

itself that are reasonably visible to other drivers and serve to distinguish the vehicle from vehicles not used in law enforcement." (*Id.* at p. 1014.)

Similarly, in the instant case--like the cases disapproved by *Hudson*--the People ask us to conclude that the proof supporting the unrelated elements of evading was sufficient to support the element requiring them to prove at least one of the officers wore a distinctive uniform. This we cannot do. Nor may we conclude, as does our dissenting colleague, that defendant admitted to evading the police as defined by sections 2800.1 and 2800.2 from his testimony on the witness stand that he knew the police were following him. The statute does not require that *either* defendant actually knew of the police officers' presence in pursuit *or* that the pursuit met the requirements listed in section 2800.1. Rather, "[t]he statute requires four distinct elements, each of which *must* be present: (1) a red light, (2) a siren, (3) a distinctively marked vehicle, and (4) a peace officer in a distinctive uniform." (*Hudson, supra,* 38 Cal.4th at p. 1008, italics added.) Whether we consider it reasonable or not, if the pursuing officers were for any reason wearing plainclothes and belt badges, defendant would not be in violation of section 2800.2 regardless of his admissions on the witness stand. (See *People v. Matthews, supra,* 64 Cal.App.4th at p. 491 [plainclothes officer wearing badge not in a distinctive uniform as required by section 2800.1; section 2800.2 conviction accordingly reversed].) Here, we simply do not know what the police officers were wearing.

We thus are compelled to conclude that despite defendant's admission under oath of actual knowledge as to the identity of his pursuers as law enforcement officers, because the prosecutor neglected to ask a single, simple question to elicit evidence of the officers' attire and there is no evidence otherwise in the record that the officers were wearing distinctive uniforms, defendant's conviction cannot stand. Although our conclusion may seem bewildering to some, any remedy lies " 'on the other side of Tenth Street, in the halls of the Legislature.' " (*Siskiyou County Farm Bureau v. Department of Fish and Wildlife* (2014) 237 Cal.App.4th 411, 420-421.)

9

Given the complete lack of evidence regarding the officers' attire during the pursuit or even at any point during the relevant time period, we conclude that the prosecution failed to meet its burden of proof on the distinctive uniform element.[4]

## DISPOSITION

The judgment of conviction for count 3 (§ 2800.2) is reversed and count 3 is ordered dismissed. The judgment is affirmed in all other respects. The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy thereof to the Department of Corrections and Rehabilitation.

 

 

 

_____/s/_____
Duarte, J.

I concur:

_____/s/_____
Nicholson, Acting P. J.

_____

[4] Although we disagree with the dissent's conclusion that defense counsel effectively conceded that his client was guilty of evading, certainly to the degree that would permit the People to secure defendant's conviction despite having failed to prove an essential element of the crime they themselves chose to charge, we cannot help but agree that many balls were dropped here, by both the prosecutor and defense counsel. Both appear to have completely forgotten about the evading charge at trial. This lack of care at earlier stages of this case has resulted in the expenditure of time and resources on appeal that would not have been necessary had the parties paid more attention to *all* aspects of this case at trial.

Hull, J.

I concur in Part I of the majority opinion. As to Part II, I dissent.

As the majority opinion sets forth, defendant was charged with and found guilty of first degree murder in violation of Penal Code section 187, subdivision (a) and driving in willful or wanton disregard for the safety of persons or property while fleeing from a pursuing police officer in violation of Vehicle Code section 2800.2. The majority reverses the section 2800.2 conviction due to a lack of evidence that the pursuing police officers in this matter were wearing distinctive uniforms during the pursuit.

Defendant testified at trial and, regarding the police pursuit, said on direct examination:

"Q.     And what do you do at that intersection of Brookefield and Bluebrook?

"A.     I stopped and made a right turn.

"Q.     What happens next?

"A.     *Police got behind me.*

"Q.     What were you doing at that point?

"A.     I was smoking. I was smoking and I looked in the rear view mirror *police was behind me with their lights on.* So I told KB *police behind us* put that down. He said drive." (Emphasis added.)

On cross examination, defendant testified:

"Q.     But then Mr. Northam asked you what you were doing *as the police were coming on to you*, you said you were smoking?

"A.     I was. And I looked up in my rear view mirror and *I saw the police behind me with their lights on.*"

1

"Q.	Now when you came up to Brookfield you had your headlight out; right?

"A.	No, I had them on.

"Q.	But *the police* were going to pull you over; right?

"A.	Yeah.  They had their lights on me.

"Q.	Now, how is it - - or why is it that you - - you didn't pull over and just *stop for the police*?

"A.	Because I had crack and the pipe in the car."  (Emphasis added.)

"Q.	Okay, when you start driving the speed that you were driving on that chase - -?

"A.	Uh-huh.

"Q.	- - do you think you're going to go to jail for that?

"A.	Yes, *that's why I ran.*

"Q.	*So when you were going you knew [that] it was the police behind you that entire time; right*?

"A.	Uh-huh.

"Q.	Is that yes?

"A.	Yes."  (Emphasis added.)

On redirect examination, defendant testified:

"Q.	Now, Mr. Smith asked you about your thought process for the pursuit.  Do you know what you were thinking *when you were fleeing from the cops*?

"A.	No.

"Q.	Were you having - -

"A.    *Just to get away.*

"Q.    Now you testified on cross-exam that cops are assholes?

"A.    Yes.

"Q.    And in your experience, in your life have you had positive interactions with law enforcement?

"A.    Getting slammed against the car, getting beat up, yes.

"Q.    So when you say, quote, 'I don't fuck with the police' end quote, what does that mean?

"A.    That means I don't fuck with the police, they're assholes.

"Q.    So you don't mess with them?

"A.    No, I do not." (Emphasis added.)

And finally, on recross examination, defendant testified:

"Q.    So what crime did KB commit in your mind?

"A.    *Running from the police, like I was.*

"Q.    So the only crime that KB did was run from the police?

"A.    Yes.

"Q.    But he's a passenger *in your car you were driving, right*?

"A.    Yes." (Emphasis added.)

During closing arguments, as to this charge, the People merely invited the jury to review the police car's dash camera video taken during the chase. The defendant's attorney did not speak to the charge at all. Curiously, although the jury was properly instructed on all of the elements of the offense and were instructed that there had to be proof beyond a reasonable doubt that the pursuing officers were in distinctive uniforms,

3

the jury found the defendant guilty of violating Vehicle Code section 2800.2 as charged. It is apparent the judge, jury and counsel were focused on the far more serious charge of murder and paid little attention to the evading charge especially given the video and defendant's admissions that he knew he was fleeing from the police.

The majority finds defendant's numerous admissions that he knew he was fleeing from the police insufficient to prove the Vehicle Code section 2800.2 charge because defendant did not specifically admit the pursuing officers were wearing distinctive uniforms.

The majority and I have different views of the crime that was committed here. The majority sees the crime as flight from a pursuing police officer who is in a distinctive uniform and who is in a distinctively marked motor vehicle exhibiting at least one lighted red lamp visible from the front and who is sounding the motor vehicle's siren as reasonably necessary. But the essence of the crime and the dangerous conduct the Legislature sought to prevent by enacting this statute is knowingly fleeing from a police officer.

I recognize that the statute specifically states the conditions necessary to the crime and that *People v. Hudson* (2006) 38 Cal.4th 1002, 1008 (*Hudson*) holds that there are "four distinct elements" to the crime, a red light, a siren, a distinctively marked vehicle and a peace officer in a distinctive uniform. The Legislature set forth these conditions no doubt so that a person being pursued by another vehicle is reasonably put on notice that the pursuit is by a law enforcement officer and not by someone who is merely posing as one. Parenthetically, I note that defendant, as he was being pursued here by a police vehicle at night that was behind him with its headlights on could not have seen, in any event, whether the officer or officers pursuing him were in a distinctive uniform. But that is of no moment under Vehicle Code section 2800.1. The statute says what it says.

I have no quarrel with *Hudson* or with the many cases that are consistent with its holding. But they should not be dispositive here because, neither in *Hudson* nor in any of

4

the other cases that I have found that are consistent with its holding, did the defendant testify that he knew he was fleeing from and attempting to evade law enforcement officers.

In *People v. Peters* (1950) 96 Cal.App.2d 671 (*Peters*), the defendant was charged with manslaughter. On appeal, he claimed there was insufficient evidence of the corpus delicti because there was no evidence that the decedent died from the knife wound inflicted by the defendant. But his claim at trial was that he acted in self-defense or that the killing was an accident. The only evidence presented at trial regarding the cause of decedent's death was that the decedent died sometime between the assault and the filing of the information nearly a month later. No evidence was presented that the deceased met his death at the hands of the defendant, i.e. that the defendant's acts were the cause of the decedent's death, a necessary *element* of any homicide.

As to this lack of evidence of this element of the crime the court said:

"It is elementary that in a homicide case the fact that the deceased met his death through the act or agency of the defendant must be proved. It may, of course, be proved by circumstantial evidence. (*People v. Spencer*, 58 Cal.App. 197 [208 P. 380].) Obviously, here, the cause of death was not proved by evidence. However, the cause of death is a fact, which, like every other fact, need not be proved, even in a criminal case, if admitted or conceded by defendant. While there was no direct proof of the cause of death, *the conduct and attitude of defendant at the trial*, as disclosed by the record, constituted at least an indirect concession of the fact.

"The situation in this case is unique and probably will never occur in another case. It is not a matter of failure of proof (in spite of the fact that the district attorney offered no evidence of the cause or time of death), but of assumption by all concerned in the trial, -- judge, jury, prosecution and defense, -- that deceased died from the knife wound inflicted by defendant, and that so far as the cause of death was concerned, it really was not an issue in the case. The only issue was whether defendant could be excused from the

5

stabbing of his friend, under the claim of self-defense, or under the claim of accident. The claim of self-defense to a charge of manslaughter necessarily is an admission that the victim died because of an act of the defendant. If he had not so died, the act could not be manslaughter and hence there would be no necessity to show that the act was justified. However, in the usual case the mere use by the defendant of such a claim does not relieve the prosecution of its burden of proving that the death was so caused, as the defendant may sit back and require the prosecution to prove its case and then, and only then, be required to set up his defense, which may be (1) that defendant's act did not cause death, or (2) that if it did, defendant was justifiably acting in self-defense, or (3) that the defendant's act was accidental. Defendant may avail himself of any or all of these defenses. But here, defendant did not avail himself of the fact that when the prosecution closed its case, it had not proved the cause of death, nor did the defendant avail himself of the defense numbered (1) above. By his conduct he conceded that the death resulted from the knife wound and relied solely and wholly on his claims of self-defense and accident.

"In a criminal case a defendant is not called upon to make explanation, to deny issues expressly (his plea of not guilty does that for him), nor is he required to point out to the prosecution its failure to make a case against him or to prove any link in the required chain of guilt. On the other hand, he cannot mislead the court and jury by seeming to take a position as to the issues in the case and then on appeal attempt to repudiate that position. A reading of the proceedings at the trial, including defendant's statement at the opening of his case and his argument to the jury at the end of the case, clearly shows that at no time was he questioning either that the knife wound caused Cole's death, or that that fact had not been established or was an issue to be resolved by the jury. It also shows that defendant was conceding the cause of death.

"As evidence of the assumption by all at the trial of the cause of death, appears the following: Defendant, on cross-examination, was asked to show how he was holding the

6

knife and how with knife in hand he pushed Cole. At the end of several questions and answers on this subject and about four demonstrations, defendant said, 'I pushed him like that. (Demonstrating) I meant to push him with my hand.' Thereupon the district attorney said, 'And you stuck this rather dull knife into him, sufficiently deep to kill him.' No objection was made by defendant to this statement. [¶] . . . [¶]

"It is well settled that 'An admission of a fact made at the trial in open Court by the prisoner or his counsel may be properly considered by the jury.' (*People v. Garcia*, 25 Cal. 531, 534.) In *People v. Hammond*, 26 Cal.App.2d 145 [78 P.2d 1172], defendant's counsel in open court admitted the details of the crime. It was held: 'A defendant is bound by the admission of his counsel made in open court.' (P. 150.)

"In *State v. Whiteaker*, 118 Ore. 656 [247 P. 1077], defendant was convicted of violating Oregon's 'Blue Sky Law' in that he sold certain securities without having obtained the necessary permit. On appeal, defendant contended that his lack of permit was not proved. After considering certain testimony on the subject, the court said (p. 1080 [247 P.]): 'Furthermore, defendants never contended that any license or permit had been issued to them. In the opening statement to the jury counsel for appellant, in response to the inquiry from the court, "Do you claim to have had a permit from the Corporation department to sell these (referring to 'securities')"? answered, "No; your Honor, I claim this, that I drew up a receipt which, according to my notions, conformed with the Blue Sky Law, did not conflict with it." It was not necessary for the prosecution to prove that which was admitted in open court. 16 C.J. 891. Such admissions are conclusive . . . .' [¶] . . . [¶]

"It would be a miscarriage of justice to set aside a verdict found by the jury on all issues which defendant at the trial believed necessary to be submitted to the jury. *After all, a criminal case or court proceeding is not a game in which participants may be misled by a defendant's attitude and conduct at the trial, and then the verdict be set aside*

7

*on appeal, because defendant contends there was no proof of a fact which he had conceded*, not by express word, but by conduct.

"In the instructions which defendant requested, no hint is given that he was not conceding the cause of death. He offered several instructions on homicide, using the words 'homicide' and 'killing,' some of which the court gave, and he offered no instruction even remotely indicating that the cause of death was an issue. In defendant's instruction 13, given by the court, defendant used the words 'that at the time the knife was wielded which resulted in the death of' Cole. In his instruction 15 he used the language, 'The mere fact that an unfortunate and *fatal* accident happened . . .' (Emphasis added.) Defendant closed his argument to the jury in this language: '. . . it is only justice, both for the State and for this defendant, that he be freed, because Mr. Peters' actions, *although resulting in disaster to his friend as we have all admitted*, were in defense of his life and that of his friend.' (Emphasis added.) [¶] . . . [¶]

"A defendant in a criminal case, of course, is entitled to the benefit of every reasonable doubt, but the record shows that by the conduct of defendant and all other participants at the trial, no doubt was raised that defendant was conceding the cause of death." (*People v. Peters*, *supra,* 96 Cal.App.2d at pages 675-678; emphasis added.)

*Peters* is still good law, no doubt because it makes eminent good sense. The court's holding in *Peters* should show us the way here.

I recognize that defendant here did not expressly admit that the pursuing officers were wearing distinctive uniforms. But he did admit that he knew he was fleeing from law enforcement officers whatever they were wearing. The defendant in *Peters* did not, after all, specifically admit that he was the cause of his victim's death but was deemed to have admitted that fact by his conduct at trial.

I also recognize that a defendant has an absolute right to depend on the prosecution's failure to present sufficient evidence to support each element of the offense with which he is charged. But, in my view, he does not have a right to repeatedly admit

8

his guilt of the crime with which he is charged and then claim on appeal his admissions do not count because the prosecution failed to produce evidence of one of the elements of the crime.

While admittedly there was no evidence presented at trial that the pursuing law enforcement officers wore a distinctive uniform, even though that is an element of the offense, not holding the defendant to his plain, unambiguous and repeated admissions that he knew he was fleeing from police officers and leading them on a dangerous chase distorts the criminal justice system.  I would affirm the judgment.


                                        _____/s/_____
                                        Hull, J.


9