HULL, J.,
Concurring and Dissenting.—I concur in part I of the majority opinion. As to part II, I dissent.
As the majority opinion sets forth, defendant was charged with and found guilty of first degree murder in violation of Penal Code section 187, subdivision (a) and driving in willful or wanton disregard for the safety of persons or property while fleeing from a pursuing police officer in violation of Vehicle Code section 2800.2. The majority reverses the section 2800.2 conviction due to a lack of evidence that the pursuing police officers in this matter were wearing distinctive uniforms during the pursuit.
Defendant testified at trial and, regarding the police pursuit, said on direct examination:
“Q. And what do you do at that intersection of Brookefield and Bluebrook?
“A. I stopped and made a right turn.
“Q. What happens next?
“A. Police got behind me.
*1227 “Q. What were you doing at that point?
“A. I was smoking. I was smoking and I looked in the rear view mirror police was behind me with their lights on. So I told KB police behind us put that down. He said drive.” (Italics added.)
On cross-examination, defendant testified:
‘“Q. But then Mr. Northam asked you what you were doing as the police were coming on to you, you said you were smoking?
‘“A. I was. And I looked up in my rear view mirror and I saw the police behind me with their lights on.”
“Q. Now when you came up to Brookfield you had your headlight[s] out; right?
‘“A. No, I had them on.
‘“Q. But the police were going to pull you over; right?
‘“A. Yeah. They had their lights on me.
‘“Q. Now, how is it—or why is it that you—you didn’t pull over and just stop for the police?
‘“A. Because I had crack and the pipe in the car.” (Italics added.)
“Q. Okay, when you start driving the speed that you were driving on that chase—?
“A. Uh-huh.
“Q. —do you think you’re going to go to jail for that?
‘“A. Yes, that’s why I ran.
‘“Q. So when you were going you knew [that] it was the police behind you that entire time; right!
“A. Uh-huh.
“Q. Is that yes?
*1228 “A. Yes.” (Italics added.)
On redirect examination, defendant testified:
‘“Q. Now, Mr. Smith asked you about your thought process for the pursuit. Do you know what you were thinking when you were fleeing from the cops!
“A. No.
‘“Q. Were you having—
‘“A. Just to get away.
‘“Q. Now you testified on cross-exam that cops are assholes?
“A. Yes.
‘“Q. And in your experience, in your life have you had positive interactions with law enforcement?
‘“A. Getting slammed against the car, getting beat up, yes.
‘“Q. So when you say, quote, ‘I don’t fuck with the police’ end quote, what does that mean?
‘“A. That means I don’t fuck with the police, they’re assholes.
‘“Q. So you don’t mess with them?
“A. No, I do not.” (Italics added.)
And finally, on recross-examination, defendant testified:
‘“Q. So what crime did KB commit in your mind?
“A. Running from the police, like I was.
‘“Q. So the only crime that KB did was run from the police ?
“A. Yes.
‘“Q. But he’s a passenger in your car you were driving, right!
“A. Yes.” (Italics added.)
*1229 During closing arguments, as to this charge, the People merely invited the jury to review the police car’s dash camera video taken during the chase. Defendant’s attorney did not speak to the charge at all. Curiously, although the jury was properly instructed on all of the elements of the offense and were instructed that there had to be proof beyond a reasonable doubt that the pursuing officers were in distinctive uniforms, the jury found defendant guilty of violating Vehicle Code section 2800.2 as charged. It is apparent the judge, jury and counsel were focused on the far more serious charge of murder and paid little attention to the evading charge, especially given the video and defendant’s admissions that he knew he was fleeing from the police.
The majority finds defendant’s numerous admissions that he knew he was fleeing from the police insufficient to prove the Vehicle Code section 2800.2 charge because defendant did not specifically admit the pursuing officers were wearing distinctive uniforms.
The majority and I have different views of the crime that was committed here. The majority sees the crime as flight from a pursuing police officer who is in a distinctive uniform and who is in a distinctively marked motor vehicle exhibiting at least one lighted red lamp visible from the front and who is sounding the motor vehicle’s siren as reasonably necessary. But the essence of the crime and the dangerous conduct the Legislature sought to prevent by enacting this statute is knowingly fleeing from a police officer.
I recognize that the statute specifically states the conditions necessary to the crime and that People v. Hudson (2006) 38 Cal.4th 1002, 1008 [44 Cal.Rptr.3d 632, 136 P.3d 168] (Hudson) holds that there are “four distinct elements” to the crime, a red light, a siren, a distinctively marked vehicle and a peace officer in a distinctive uniform. The Legislature set forth these conditions no doubt so that a person being pursued by another vehicle is reasonably put on notice that the pursuit is by a law enforcement officer and not by someone who is merely posing as one. Parenthetically, I note that defendant, as he was being pursued here by a police vehicle at night that was behind him with its headlights on could not have seen, in any event, whether the officer or officers pursuing him were in a distinctive uniform. But that is of no moment under Vehicle Code section 2800.1. The statute says what it says.
I have no quarrel with Hudson or with the many cases that are consistent with its holding. But they should not be dispositive here because, neither in Hudson nor in any of the other cases that I have found that are consistent with its holding, did the defendant testify that he knew he was fleeing from and attempting to evade law enforcement officers.
*1230 In People v. Peters (1950) 96 Cal.App.2d 671 [216 P.2d 145] (Peters), the defendant was charged with manslaughter. On appeal, he claimed there was insufficient evidence of the corpus delicti because there was no evidence that the decedent died from the knife wound inflicted by the defendant. But his claim at trial was that he acted in self-defense or that the killing was an accident. The only evidence presented at trial regarding the cause of decedent’s death was that the decedent died sometime between the assault and the fifing of the information nearly a month later. No evidence was presented that the deceased met his death at the hands of the defendant, i.e., that the defendant’s acts were the cause of the decedent’s death, a necessary element of any homicide.
As to this lack of evidence of this element of the crime the court said:
“It is elementary that in a homicide case the fact that the deceased met his death through the act or agency of the defendant must be proved. It may, of course, be proved by circumstantial evidence. (People v. Spencer, 58 Cal.App. 197 [208 P. 380].) Obviously, here, the cause of death was not proved by evidence. However, the cause of death is a fact, which, like every other fact, need not be proved, even in a criminal case, if admitted or conceded by defendant. While there was no direct proof of the cause of death, the conduct and attitude of defendant at the tried, as disclosed by the record, constituted at least an indirect concession of the fact.
“The situation in this case is unique and probably will never occur in another case. It is not a matter of failure of proof (in spite of the fact that the district attorney offered no evidence of the cause or time of death), but of assumption by all concerned in the trial,—judge, jury, prosecution and defense,—that deceased died from the knife wound inflicted by defendant, and that so far as the cause of death was concerned, it really was not an issue in the case. The only issue was whether defendant could be excused from the stabbing of his friend, under the claim of self-defense, or under the claim of accident. The claim of self-defense to a charge of manslaughter necessarily is an admission that the victim died because of an act of the defendant. If he had not so died, the act could not be manslaughter and hence there would be no necessity to show that the act was justified. However, in the usual case the mere use by the defendant of such a claim does not relieve the prosecution of its burden of proving that the death was so caused, as the defendant may sit back and require the prosecution to prove its case and then, and only then, be required to set up his defense, which may be (1) that defendant’s act did not cause death, or (2) that if it did, defendant was justifiably acting in self-defense, or (3) that the defendant’s act was accidental. Defendant may avail himself of any or all of these defenses. But here, defendant did not avail himself of the fact that when the prosecution closed its case, it had not proved *1231 the cause of death, nor did the defendant avail himself of the defense numbered (1) above. By his conduct he conceded that the death resulted from the knife wound and relied solely and wholly on his claims of self-defense and accident.
“In a criminal case a defendant is not called upon to make explanation, to deny issues expressly (his plea of not guilty does that for him), nor is he required to point out to the prosecution its failure to make a case against him or to prove any link in the required chain of guilt. On the other hand, he cannot mislead the court and jury by seeming to take a position as to the issues in the case and then on appeal attempt to repudiate that position. A reading of the proceedings at the trial, including defendant’s statement at the opening of his case and his argument to the jury at the end of the case, clearly shows that at no time was he questioning either that the knife wound caused Cole’s death, or that that fact had not been established or was an issue to be resolved by the jury. It also shows that defendant was conceding the cause of death.
“As evidence of the assumption by all at the trial of the cause of death, appears the following: Defendant, on cross-examination, was asked to show how he was holding the knife and how with knife in hand he pushed Cole. At the end of several questions and answers on this subject and about four demonstrations, defendant said, ‘I pushed him like that. (Demonstrating) I meant to push him with my hand.’ Thereupon the district attorney said, ‘And you stuck this rather dull knife into him, sufficiently deep to kill him.’ No objection was made by defendant to this statement. [¶] . . . [¶]
“It is well settled that ‘An admission of a fact made at the trial in open Court by the prisoner or his counsel may be properly considered by the jury.’ (People v. Garcia, 25 Cal. 531, 534.) In People v. Hammond, 26 Cal.App.2d 145 [78 P.2d 1172], defendant’s counsel in open court admitted the details of the crime. It was held: ‘A defendant is bound by the admission of his counsel made in open court.’ (P. 150.)
“In State v. Whiteaker, 118 Ore. 656 [247 P. 1077], defendant was convicted of violating Oregon’s ‘Blue Sky Law’ in that he sold certain securities without having obtained the necessary permit. On appeal, defendant contended that his lack of permit was not proved. After considering certain testimony on the subject, the court said (p. 1080 [247 P.]): ‘Furthermore, defendants never contended that any license or permit had been issued to them. In the opening statement to the jury counsel for appellant, in response to the inquiry from the court, “Do you claim to have had a permit from the Corporation department to sell these (referring to ‘securities’)”? answered, “No; your Honor, I claim this, that I drew up a receipt which, according to *1232 my notions, conformed with the Blue Sky Law, did not conflict with it.” It was not necessary for the prosecution to prove that which was admitted in open court. 16 C.J. 891. Such admissions are conclusive . . . .’ [¶] . . . [¶]
‘“It would be a miscarriage of justice to set aside a verdict found by the jury on all issues which defendant at the trial believed necessary to be submitted to the jury. After all, a criminal case or court proceeding is not a game in which participants may be misled by a defendant’s attitude and conduct at the tried, and then the verdict be set aside on appecd, because defendant contends there was no proof of a fact which he had conceded, not by express word, but by conduct.
“In the instructions which defendant requested, no hint is given that he was not conceding the cause of death. He offered several instructions on homicide, using the words ‘homicide’ and ‘killing,’ some of which the court gave, and he offered no instruction even remotely indicating that the cause of death was an issue. In defendant’s instruction 13, given by the court, defendant used the words ‘that at the time the knife was wielded which resulted in the death of’ Cole. In his instruction 15 he used the language, ‘The mere fact that an unfortunate and fatal accident happened . . .’ (Emphasis added.) Defendant closed his argument to the jury in this language: ‘. . . it is only justice, both for the State and for this defendant, that he be freed, because Mr. Peters’ actions, although resulting in disaster to his friend as we have all admitted, were in defense of his life and that of his friend.’ (Emphasis added.) [¶] . . . [¶]
“A defendant in a criminal case, of course, is entitled to the benefit of every reasonable doubt, but the record shows that by the conduct of defendant and all other participants at the trial, no doubt was raised that defendant was conceding the cause of death.” (People v. Peters, supra, 96 Cal.App.2d at pages 675-678, italics added.)
Peters is still good law, no doubt because it makes eminent good sense. The court’s holding in Peters should show us the way here.
I recognize that defendant here did not expressly admit that the pursuing officers were wearing distinctive uniforms. But he did admit that he knew he was fleeing from law enforcement officers, whatever they were wearing. The defendant in Peters did not, after all, specifically admit that he was the cause of his victim’s death but was deemed to have admitted that fact by his conduct at trial.
I also recognize that a defendant has an absolute right to depend on the prosecution’s failure to present sufficient evidence to support each element of *1233 the offense with which he is charged. But, in my view, he does not have a right to repeatedly admit his guilt of the crime with which he is charged and then claim on appeal his admissions do not count because the prosecution failed to produce evidence of one of the elements of the crime.
While admittedly there was no evidence presented at trial that the pursuing law enforcement officers wore a distinctive uniform, even though that is an element of the offense, not holding defendant to his plain, unambiguous and repeated admissions that he knew he was fleeing from police officers and leading them on a dangerous chase distorts the criminal justice system. I would affirm the judgment.
Appellant’s petition for review by the Supreme Court was denied October 26, 2016, S236688.